mit said payments to plaintiff. The contract was completed under this arrangement.

It, therefore, appears that instead of appealing from the finding of fact by the contracting officer, on the basis of which he terminated the contract, plaintiff acquiesced therein and entered into a substitute arrangement for the further performance of the contract.

Plaintiff, therefore, is bound by the contracting officer's finding that it was not pursuing the contract with such diligence as would insure its completion on time. This fact justified the contracting officer in terminating the contract.

Plaintiff, therefore, is not entitled to recover whatever damages may have been suffered thereby.

The commissioner finds that the plaintiff has been paid the sum of $5,130.00 for work done under the contract prior to its termination. Plaintiff takes no exception thereto and does not now contend that any more is due for work done prior to the termination of the contract.

Since it is clear that plaintiff is not entitled to recover, for the reasons stated, we do not consider whether or not the contracting officer was in fact justified in terminating the contract, nor whether plaintiff was damaged thereby.

Plaintiff's petition will be dismissed. It is so ordered.

WHALEY, Chief Justice, and MADDEN and LITTLETON, Judges, concur.

JONES, Judge, took no part in the decision of this case.

**CENTRAL HANOVER BANK & TRUST CO. v. UNITED STATES.**

No. 46003.

Court of Claims.

Feb. 5, 1945.

For former opinion, see 57 F.Supp. 497.

Harold L. Herrick, of New York City (Huber B. Lewis, of New York City, on the brief), for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

WHITAKER, Judge.

This case is before us on plaintiff's motion for a new trial. On the former hearing both at the bar and in their briefs both parties argued the case on the assumption that if Mrs. Johnson's three children died without issue before she did, the trust would fail and the property, therefore, would revert to her. We were accordingly of the opinion, since Mrs. Johnson must have known that, or was at least chargeable with that knowledge, that she must have intended to reserve that possibility of reverter.

But, now, on motion for a new trial plaintiff earnestly argues that under the law of New York, in which State Mrs. Johnson resided when the trust instrument was executed, the property would not have reverted to her, but would have vested absolutely in the last surviving remainder

566

man even if he had died before the settlor, or that it would have been divided equally between the estates of the three remainder men if all had predeceased the settlor. It cites several New York cases holding, in the case of wills, that the remainder interest vests absolutely in the last surviving remainder man, even though that last survivor dies before the life tenant. Matter of McCombs' Estate, 261 App.Div. 449, 25 N.Y.S.2d 894, affirmed 287 N.Y. 557, 38 N.E.2d 226; Matter of Hadden's Estate, 178 Misc. 939, 36 N.Y.S.2d 34; Matter of Stephani's Estate 161 Misc. 803, 293 N.Y.S. 485, affirmed 253 App.Div. 705, 1 N.Y.S.2d 500. Cf. Jarman on Wills, 7th Ed. p. 1340.

There may be some doubt that these decisions are equally applicable to remainder interests created by trusts, but they may be, and Mrs. Johnson may have thought that they were when the trust instrument was executed. If she did, even though she may have been mistaken, it cannot be said that she "intended" to reserve any interest in herself, even the possibility of a reverter. The Act taxes only those transfers which are *"intended to take effect in possession or enjoyment at or after * * * death."* 26 U.S. C.A.Int.Rev.Code, § 811(c). (Italics ours.) Unless she "intended" to reserve some estate in herself, other than the life estate, the transfer does not come within the terms of the taxing act, even though she did not succeed in actually divesting herself of all possibility of an interest therein.

Our conclusion on the former hearing that she had "intended" to reserve this possibility of a reverter was based on the statement of the parties that this was the necessary result of the trust instrument under the New York law. Therefore, we concluded, Mrs. Johnson must have "intended" this result. If this was not the necessary result under the law, as now appears, then such an intention is not necessarily to be implied.

In all cases heretofore decided the intention to make such a reservation was expressed. There was no doubt of an intention of reserving something that should pass only at death. But, we do not suppose that it is necessary that such an intention be expressed; it may as well be implied from all the facts and circumstances.

However, we are of opinion that the facts of this case do not disclose such an intention, but rather negative it. The property Mrs. Johnson had, she had acquired from her deceased husband; she was about to remarry, and she evidently wanted to insure that the children of her former marriage would succeed at her death to the property that had been their father's, without having to divide it with her husband-to-be or any other children she might have. She was 42 years old and the children were 11, 19, and 20, respectively. We doubt she ever thought about the possibility that she might survive her children and their children. To say the least, that possibility was quite remote and might easily have been overlooked. But if she did think of it, did she think the property would come back to her in that event or go to the heirs of the survivor of her children and their issue? We do not know, but we do feel sure under the facts that she thought she was completely disposing of the property, save only for a life interest in it which she retained for herself.

Convinced that this was her intention, we do not think it can be said that this was a transfer "intended to take effect in possession or enjoyment" at her death. We are of opinion she meant to dispose of the remainder interest completely, in her lifetime, leaving nothing of the remainder to vest only at her death.

Plaintiff's motion for a new trial is granted. The findings of fact heretofore filed on November 6, 1944, are adopted and confirmed, but there is added as finding 12 the following: "12. The transfer of the property in trust, as set out in finding 3, was not intended to take effect in possession or enjoyment at the death of the settlor."

The former opinion is modified in accordance with the foregoing, but the former conclusion of law is withdrawn, and the following is substituted therefor:

### Conclusion of Law

Upon the findings of fact heretofore filed and as amended herein, the court concludes as a matter of law that the plaintiff is entitled to recover of the defendant the sum of $148,696.03, together with interest as provided by law.

It is therefore adjudged and ordered that the plaintiff recover of and from the United States the sum of $148,696.03, together with interest as provided by law. It is so ordered.

WHALEY, C. J., concurs.

JONES, J., took no part in the decision of this case.

**LITTLETON, Judge (concurring).**

I concur in the foregoing opinion, but I would go further and hold on the record in this case that, notwithstanding the decisions of the New York courts referred to, plaintiff would be entitled to recover since the transfer when made was absolute and irrevocable, and any possibility of reversion to the grantor through the prior death of the named beneficiaries, including their issue, was too remote to justify the taxing authorities implying an intention on the part of the donor to reserve a reversionary interest of such a character as would justify the Government in including the value of the trust property in the gross estate for the purpose of the excise tax upon a transfer "intended to take effect in possession or enjoyment at or after death" within the meaning of the taxing act.

I think the rule announced in Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, where a reversionary interest was explicitly retained, should not be extended by implication and without proof that such was the intention of the donor.

**MADDEN, Judge (dissenting).**

In our original decision we followed the assumption of both parties that the grantor continued, after the conveyance in trust, to have an interest in the corpus of the trust, and would have gotten it back, if all of her children had predeceased her without issue. We held that the fact that her interest remained in her by inertia rather than by express provision of the trust instrument was not controlling.

In its motion for a new trial the plaintiff gives the trust instrument an essentially different construction. It now says that the grantor had no interest at all in the corpus; that under no circumstances would the property have come back to her. Though the plaintiff does not say so, I recognize, of course, that what the grantor might have received by inheritance from her children has no bearing on the question.

In determining the correctness of the interpretation of the trust instrument now urged by the plaintiff, it becomes necessary to consider what would have happened to the property if all of the three children had predeceased their mother without issue. If the mother had no interest in the corpus, either the estate of each child would have taken one-third of the prop-

erty when the mother died, or the estate of the last survivor of the three, even though he did not survive the mother, would have taken all the property. The plaintiff takes no position as to which of these results would have followed. I recognize that there is a good deal of unreality about trying to determine, for the purpose of applying the estate tax statute, where property would have gone under the terms of a conveyance, if certain things had happened which did not happen. If the events which I am assuming had in fact happened, the court which had the instrument to interpret would have had a real flesh and blood case, not an abstraction, to deal with. If the children had all died without wills, spouses, or creditors, the mother, if she had no reversionary interest, would probably have taken as heir of the survivor, who would have taken the shares of the others as their heir, and the question of the capacity in which she took might not have been very important. But if one or more of the children had come of age and made a will, or had married and thus left a statutory heir, or had become heavily involved in debt, and then they had all died before their mother, the question of whether their mother's bounty should go to strangers without the children ever having had it, would have been no mere hypothetical question.

I think that if the question had arisen as I have stated it, the court would have held that the mother was entitled to the property; that the children did not have inheritable interests unless they survived the mother.

No exact precedent can be cited, of course, for our task is to give meaning to words different from any that have been litigated. The New York statutory definition in Section 40 of its Real Property Law, Consol.Laws, c. 50, is of no assistance. It, as interpreted in Moore v. Littel, 41 N.Y. 66, defines as a vested remainder the interest of one who, "if the life estate should now cease, would, eo instanti et ipso facto, have an immediate right of possession * * *." Under that definition a conveyance to A for life, then to B and his heirs if B survives A, would give B a vested remainder, but so calling it would neither enhance its value in B's hands nor diminish the chance which the grantor would have of getting the property back if B did not survive A. Nor should such a definition affect the taxability of the sub-

stantial interest which the grantor has in the property, if he dies before A dies. The plaintiff cites some English cases which give substantial support to the interpretation for which it contends. Harrison v. Foreman, 1800, 5 Ves. 207; Browne v. Kenyon, 1818, 3 Mad. 410; Sturgess v. Pearson, 1819, 4 Mad. 411; Maddison v. Chapman, 1861, 1 J. and H. 469; Wiley v. Chanteperdrix, 1893, 1 Ir.R. 209.

In the instant case, the grantor directed the trustee "upon my death to assign, transfer and set over" the property "to my three children," naming them, "and the survivor or survivors of them" with the provision for issue of the children to take their parent's share. While the so-called "divide and pay over" rule is not in good repute, nevertheless I think there is some, perhaps slight, significance in the fact that the only gift to the children is in the direction to pay over the property to them at their mother's death; that for the trustee to pay over the money, not to the child, but to a devisee or creditor or spouse of the child would not be very obviously within the terms of the direction. I think that the gift here made to the three children "and the survivor, or survivors of them" is not greatly different from a gift to "such of the three children as survive me", which latter expression would rather plainly give interests subject to the condition precedent of surviving the mother. I think that the grantor's express statement, after the gift to the children "and the survivor, or survivors of them," "but if any of my said three children has predeceased me and left issue him or her surviving," then such issue should take that share, is hardly consistent with an intent that in certain circumstances, if a child so died and left no such issue, his share would go to his creditors, or devisees, or spouse.

I realize that the interpretation which a court gives to such an instrument must necessarily be subject to misgivings as to its correctness. I have, however, little doubt as to what interpretation the grantor would have wished to have given to the instrument, if the events, which I have been obliged to assume, had occurred. I know of no canons of interpretation, currently significant, which exert much pressure one way or another in a case involving language and circumstances such as those before us. The instrument being an inter vivos transfer and not a will, the presumption against partial intestacy has no bearing. And feudal reasons of policy favoring vestedness have no significance in these times, and as to the kind of property here involved.

I think our former decision was right and I would therefore deny the motion for a new trial.