**PENNSYLVANIA CO. FOR INSURANCES ON LIVES & GRANTING ANNUITIES et al. v. UNITED STATES.**

No. 45889.

Court of Claims.

Oct. 1, 1945.

This case having been heard by the Court of Claims, the court, upon an agreed statement of facts entered into between the parties, makes the following special findings of fact:

1. The plaintiffs are the duly qualified and acting executors of the estate of Edward C. Knight, Jr., deceased. The Pennsylvania Company for Insurances on Lives and Granting Annuities is a corporation duly organized and existing under and by virtue of the laws of the State of Pennsylvania. H. Wilber Bircks is an individual and a citizen of the United States.

2. On October 21, 1937, the plaintiffs filed with the Collector of Internal Revenue a Federal Estate Tax return for the estate of Edward C. Knight, Jr., showing a gross estate of $2,691,897.37 and deductions of $587,091.25, with a resulting tax liability of $475,041.84, which was duly paid to the Collector of Internal Revenue on October 21, 1937.

3. Thereafter, as a result of an examination of the aforesaid Federal estate tax return by an agent in the employ of the Bureau of Internal Revenue and as a result of protest filed by the plaintiffs and conferences held with the said agent, it was determined that the net taxable estate under the Revenue Act of 1926, 26 U.S.C.A. Int. Rev.Acts, page 145 et seq., was in the amount of $1,607,142.03 and $1,667,142.03 under the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 475 et seq., upon which there was due a tax liability of $362,585.49 as compared with the $475,041.84 paid at

the time the return was filed, resulting in an overpayment of $112,456.35. The aforesaid overpayment of tax was based upon a reduction in the value of the real estate of the decedent by the sum of $404,200 and other minor adjustments. The adjustments which resulted in the determination of the overpayment in the amount of $112,456.35 are not in controversy in this action.

4. By letter forwarded to the plaintiffs under date of December 7, 1939, the defendant, through the Internal Revenue Agent in Charge at Philadelphia, Pennsylvania, notified the plaintiffs of a proposed overassessment against the estate of Edward C. Knight, Jr., in the amount of $112,456.35. In this letter the said Internal Revenue Agent in Charge further advised the plaintiffs that due notification of the adjustments reflecting the overassessment of $112,456.35 was forwarded to the Commissioner of Internal Revenue at Washington, D. C., under date of January 4, 1940.

5. Later the Commissioner of Internal Revenue recomputed the estate tax liability of the estate of the decedent and included in the gross estate certain assets held by The Pennsylvania Company for Insurances on Lives and Granting Annuities, as trustees, under a deed of trust dated June 28, 1912. This trust property had a value at the date of death of the decedent of $121,288.21, and the inclusion of this amount in the gross estate resulted in reducing the overpayment of estate tax to $72,857.68 from $112,456.35 as had been previously determined. In due course the overpayment of $72,857.68, together with interest, was refunded to the plaintiffs by the Commissioner of Internal Revenue.

6. On October 17, 1940, plaintiffs filed a claim for refund of estate tax with the Commissioner of Internal Revenue, through the office of the Collector of Internal Revenue at Philadelphia, Pennsylvania, the material parts of which read as follows:

"Under date of June 15, 1939, the Internal Revenue Agent-in-Charge at New Haven, Connecticut, advised the executors of this estate (Estate of Edward C. Knight, Jr.) that the net taxable estate under the 1926 Act had been tentatively determined in the amount of $2,051,062.28, while under the 1932 Act it was reflected in the amount of $2,111,062.28 with estate tax liability in the total of $537,971.70.

"As the result of protest statement filed with the said Revenue Agent-in-Charge and subsequent conferences with respect thereto in the office of the Internal Revenue Agent-in-Charge in Philadelphia, Pa., the net estate under the 1926 Act was revised to $1,067,142.03 and $1,667,142.03 under the 1932 Act, upon which estate tax liability was indicated in the total of $362,585.49, as compared with $475,041.84 paid at the time the return was filed. Notification of the recomputation of the liability, and the basis upon which the liability was redetermined, was contained in letter addressed to the agent of the taxpayer under date of December 7, 1939. The Agent of the taxpayer has been further advised that due notification of the adjustments reflecting the overassessment of $112,456.35 was forwarded to the Commissioner of Internal Revenue by the Internal Revenue Agent-in-Charge at Philadelphia under date of January 4, 1940.

"After the determination of the adjusted liability in the total of $362,585.49 and while the matter was under consideration in the office of the Commissioner of Internal Revenue, the United States Supreme Court promulgated its decision in the matter of Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, as the result of which the Commissioner instructed the Philadelphia office to reopen the matter of the determination of this estate and include as taxable property certain assets held by the Pennsylvania Company for Insurances on Lives and Granting Annuities, as Trustee, on the date of death, under irrevocable deed dated June 28, 1912, which property had a total value as of July 23, 1936, of $121,288.21.

"A recomputation, giving effect to the said adjustment, indicates a total liability in the amount of $402,184.16 and results in a reduction of the recommended overassessment to $72,857.68. A so-called 'Acceptance of Proposed Overassessment' was executed by the agent of the taxpayer under date of September 17, 1940.

"However, it is now the taxpayer's contention that a further allowance should be made in the amount of $53,238.67 indicating a total overassessment of $126,096.35. This claim for additional allowance is based on two adjustments: first, the elimination from the net estate of the $121,288.21 trust property conveyed to an irrevocable trust on June 28, 1912, inasmuch as it is not considered to be properly includible on the authority of the so-called Hallock decision, and second, the allowance, as an additional deduction, of $31,000.00 fees paid or in-

curred for attorneys and appraisers in connection with the adjustment of this matter, in accordance with the decision of the United States Board of Tax Appeals in the matter of Margaret Gordon Myers, Executrix of the Estate of Theodore F. Myers, v. Commissioner, Docket #90553.

"While, as indicated, $72,857.68 of the total refund requested herein has been recommended by the proper executive of the Internal Revenue Bureau, this claim is being filed in the total amount as explained for statutory purposes and to avoid the bar of the statute in any subsequent action that may become necessary or desirable."

7. By certificate of overassessment dated August 18, 1942, the Commissioner of Internal Revenue advised the plaintiffs of the determination of an overpayment of $10,850 based upon his consideration of the claim for refund filed by the plaintiffs on October 17, 1940. The said overpayment of $10,850 was arrived at by allowing as a deduction the additional attorneys' fees in the amount of $31,000 as set forth in the second point raised in the said claim for refund. No adjustment was made by the Commissioner of Internal Revenue with respect to his previous action whereby he had included in the assets of the Estate of Edward C. Knight, Jr., the sum of $121,288.21, representing the value, at the time of the death of Edward C. Knight, Jr., of the assets which the said Edward C. Knight, Jr., had transferred in trust by deed dated June 28, 1912. The said certificate of overassessment notified plaintiffs that their claim for refund was rejected to the extent that it was not being allowed.

The certificate of overassessment contained a paragraph reading as follows:

"This overassessment, which is subject to refund, is due to the allowance of an increase in attorneys' fees from $18,500 to $49,500. No reduction is made in the value of the taxable assets of $121,288.21, which assets were transferred in trust under date of July 28, 1912. It is the position of this office that, under the terms of the trust, upon the death of the decedent's daughter, Clara W. K. Colford, and the deaths of all of her descendants, the corpus of the trust was to be returned to the decedent, if living. No person could receive any interest or estate without surviving the decedent. There was a possibility of reverter which could not terminate without decedent's death. Accordingly, the transfer was intended to take effect at decedent's death.

No part of this refund is due to credit. To the extent not herein allowed, the claim for refund is rejected."

The said sum of $10,850 covered by the certificate of overassessment referred to above was duly refunded to the plaintiffs, together with statutory interest thereon.

8. Under date of June 28, 1912, Edward C. Knight, Jr., created a trust which reads as follows:

"Know All Men by These Presents, that I, Edward C. Knight, Jr., for and in consideration of the sum of One Dollar to me in hand well and truly paid, by the Pennsylvania Company for Insurances on Lives and Granting Annuities, at and before the sealing and delivery of these Presents, the receipt whereof is hereby acknowledged, as well as the assumption by said Company of the trusts hereinafter set forth, have granted, bargained, sold, assigned, transferred and set over, and by these Presents do grant, bargain, sell, assign, transfer, and set over unto the Pennsylvania Company for Insurance on Lives and Granting Annuities and its successors and assigns, all of my right, title and interest of, in and to the estate or under the Will of Clara Dwight Knight, deceased (with the exception of my interest in the jewelry which has heretofore been assigned to my daughter, Clara W. K. Colford), whether awarded to me by the Orphans' Court of Philadelphia County upon the adjudication of the first Account of the Executors of the said estate, or otherwise.

"To Have and to Hold the same unto the said Pennsylvania Company for Insurances on Lives and Granting Annuities, and its successors and assigns, In Trust, nevertheless, for the uses, persons, and purposes following:—

"In trust, to invest and re-invest the same, from time to time, in such securities as shall be approved by me, the said Edward C. Knight, Jr., without any obligation on the part of the Trustee to confine itself to what are known as 'Legal Investments,' and after deducting all necessary and proper charges, to pay the net income to me, the said Edward C. Knight, Jr., for and during the term of my natural life, and, upon my death, to pay the said net income to my daughter, Clara W. K. Colford, for and during the term of her natural life.

"In trust upon the death of Clara W. K. Colford, I the said Edward C. Knight, Jr., being then dead,—to pay, assign, transfer,

and set over the principal to and among the children of the said Clara W. K. Colford, then living, and the descendants of any child then dead, share and share alike, per stirpes, upon the principle of representation.

"In trust, in the event of the death of the said Clara W. K. Colford, in my lifetime, the said Edward C. Knight, Jr., without leaving descendants her surviving, to pay, assign, transfer and set over the principal of all of the estate hereby transferred, to the said Trustee of me, the said Edward C. Knight, Jr., absolutely and free from all trusts.

"In trust, in the event of the death of the said Clara W. K. Colford after my decease, the said Edward C. Knight, Jr., without leaving descendants her surviving, to pay, assign, transfer, and set over the principal to such person or persons, for such use or uses, and in such proportion or proportions, as I, the said Edward C. Knight, Jr., may, by my last Will and Testament or any writing in the nature thereof, constitute, limit, and appoint.

"This Deed of Trust is conditional upon the faithful performance by Clara W. K. Colford of a certain agreement dated the ———— day of ———— between Edward C. Knight, Jr., Edward W. Dwight, and The Pennsylvania Company for Insurances on Lives and Granting Annuities, Executors and Trustees under the Will of Clara D. Knight, deceased, and of a certain agreement dated the ———— day of ———— between Edward C. Knight, Jr., and Clara W. K. Colford, and in the event of the breach of any covenant, agreement, or condition of either of said agreements by the said Clara W. K. Colford, this Deed of Trust shall, at my option, the said Edward C. Knight, Jr., expressed in writing and delivered to the Trustee, absolutely determine and become null and void, and the said the Pennsylvania Company for Insurances on Lives and Granting Annuities shall thereafter immediately assign, transfer, and set over the principal of all of the estate hereby transferred to the said Trustee, free and clear of all trusts.

"In witness whereof, I have hereunto set my hand and seal this 28th day of June, one thousand nine hundred and twelve (1912).

"Sealed and delivered in the presence of: B. B. Lyons, C. A. Robbins.

"[SEAL]        Edward C. Knight, Jr.

"The Pennsylvania Company for Insurance on Lives and Granting Annuities hereby accepts the above trust.

"The Pennsylvania Co. for Ins on Lives etc.

"T. S. Gates, Vice-Pres.

"County of Philadelphia, ss:

"On the 28th day of June 1912, before me, the Subscriber, a Notary Public for the Commonwealth of Pennsylvania, residing in the City of Philadelphia, personally appeared the above named Edward C. Knight, Jr., who, in due form of law, acknowledged the foregoing instrument to be his act and deed and desired the same to be recorded as such.

"Witness my hand and notarial seal the day and year aforesaid.

"I am not a Stockholder, Director, or Officer of within mentioned Corporation.

"B. B. Lyons, Notary Public.

"Commission expires Feb. 21, 1915."

The aforesaid deed of trust was subject to the faithful performance by Clara W. K. Colford of the conditions set forth in two agreements executed by her in 1912 and which are specifically referred to in the said deed of trust. Clara W. K. Colford carried out the terms and conditions of the said two agreements.

9. Edward C. Knight, Jr., was born December 14, 1863, and died July 23, 1936. Clara W. K. Colford died on December 18, 1924, leaving to survive her two children, both of whom are still living. These children are Dorothy Colford Armstrong, who was born March 12, 1909, and Clara Knight Doreau, who was born March 22, 1913. Prior to the death of the said Edward C. Knight, Jr., on July 23, 1936, Dorothy Colford Armstrong had married and on July 23, 1936, she had one child, who had been born on September 27, 1930.

10. In December of 1927 The Pennsylvania Company for Insurances on Lives and Granting Annuities filed with the Court of Common Pleas for Philadelphia County its First Account under the deed of trust executed by Edward C. Knight, Jr., on June 28, 1912, in which it acknowledged that it was holding as trustee the property covered by the said deed of trust. Under date of September 18, 1928, the said Court of Common Pleas of Philadelphia County entered a decree approving the said account and directing that the principal of the trust property be awarded to The Pennsylvania

Company for Insurances on Lives and Granting Annuities to be held by it in trust under the terms of the deed of trust dated June 28, 1912.

11. Subsequent to the death of Edward C. Knight, Jr., on July 23, 1936, The Pennsylvania Company for Insurances on Lives and Granting Annuities, as trustee under the deed of trust executed by the said Edward C. Knight, Jr., on June 28, 1912, filed with the Court of Common Pleas of Philadelphia County its Petition for Distribution, requesting the Court to authorize distribution of the trust property in accordance with the conditions of the said trust deed dated June 28, 1912. In the said Petition for Distribution it was stated that Dorothy Colford Armstrong and Clara Knight Doreau, the grandchildren of Edward C. Knight, Jr., were "each entitled to one-half of the net estate now before your Honorable Court for distribution." Joinders in the Petition for Distribution were executed by Dorothy Colford Armstrong and Clara Knight Doreau and also by The Pennsylvania Company for Insurances on Lives and Granting Annuities and H. Wilber Bircks, executors of the estate of Edward C. Knight, Jr., deceased.

12. Under date of December 14, 1936, the said Court of Common Pleas of Philadelphia County entered a decree approving the Petition for Distribution, in accordance with the said decree.

In accordance with the said decree, a schedule of distribution was prepared showing the net value of the assets in the hands of the trustees and assigning one-half of the said net assets to Clara D. Doreau and one-half to Dorothy Colford Armstrong. The said schedule of distribution was approved by the Court of Common Pleas of Philadelphia County on July 6, 1937. Distribution of the said trust property was thereupon made in accordance with the schedule of distribution approved by the Court.

13. Edward C. Knight, Jr., had remarried and at the time of his death he was survived by his widow, Marie Louise LeBel Knight. Edward C. Knight, Jr., left a will which was duly admitted to probate. Under the terms of the will of Edward C. Knight, Jr., his property was distributed under terms and conditions at variance with the terms and conditions covering the distribution of the property transferred by the deed of trust executed by Edward C. Knight, Jr., on June 28, 1912.

Frank J. Albus, of Washington, D. C., for plaintiffs.

Elizabeth B. Davis, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

The issue in this estate tax case is whether the Commissioner of Internal Revenue properly included in the gross estate of the decedent, Edward C. Knight, Jr., certain property transferred by him in trust June 28, 1912. The basis of the Commissioner's action was that under the trust instrument there was a possibility of reverter which could not terminate until decedent's death and therefore the transfer was intended to take effect at decedent's death.

The trust instrument gave successive life interests to Edward C. Knight, Jr., and to his daughter, Clara W. K. Colford. It then provided for the further disposition of the trust property upon the death of Mrs. Colford under three different described conditions: (1) Her death, after Knight's death, leaving children or descendants of children; (2) her death, in Knight's lifetime, without descendants; (3) her death, after Knight's death, without descendants. In situation (1) the property was to go to the descendants living at Mrs. Colford's death, per stirpes; in (2) it was to go back to Knight; and in (3) it was to go as Knight might have appointed by a testamentary disposition.

In fact, Mrs. Colford died before Knight, and left two children, so that no one of the three described conditions covered by the trust instrument occurred. The consequence was that the trust instrument made no disposition of the property at all except that of the life estates to Knight and Mrs. Colford, in the circumstances which in fact occurred. This may well have been an oversight on Knight's part. But we think it is not permissible for the court to fill in a complete gap in a deed in order to make a disposition of property which the grantor did not, by his language, make, but which he probably would have made if he had thought of it.

■ It is true that, as shown in finding 11, the Pennsylvania court having super-

vision of the trust approved a distribution of the property as if it had been covered by the trust deed. But this approval was in response to a petition presented by all interested parties, including the executor of Knight's estate, and was nothing more than a consent decree. It represents no determination at all by a Pennsylvania court that it is the law of Pennsylvania that complete gaps in a trust deed will be filled by writing into them what would probably have been the intent of the grantor if he had given thought to the matter. We cannot, therefore, agree that the Pennsylvania court's decree binds the Government, with regard to the taxability of this transaction, or binds this court in this contested case between different parties, to follow the Pennsylvania court's consent decree.

The trust deed made no disposition of the property beyond the two life estates, in the event which occurred, and accordingly, from the time that Mrs. Colford's life estate was extinguished in 1924, Knight had a life estate by the terms of the deed and a resulting trust of the undisposed of reversion. He was therefore, in equity, the complete owner of the property at the time of his death and the estate tax should apply.

If the court should seek to fill the gap in the trust deed with some gift of a remainder to Mrs. Colford's issue, it still would have the task of formulating the language to be inserted. It must determine whether to make, for the creator of the trust, a gift of a remainder to the descendants of Mrs. Colford who should be living at her death, or to those who should be living at the death of Knight, the time at which the interest of Mrs. Colford's descendants would take effect in possession.

A reasonable construction of the trust instrument is that if Knight had made provision for the event which in fact occurred, he would have provided, as he did in the parts of the deed which he wrote, that the interests of the descendants of Mrs. Colford should not vest until they vested in possession, upon his death. For instance, if one of the two daughters of Mrs. Colford who survived her had died before Knight, leaving a child, and creditors, Knight's intention, as shown by the provisions of his deed, would have been that the child should get the property, when Knight died, and not the creditors. Family settlements in general keep the interests contingent, so that those of the family who are alive when the time for enjoyment arrives may not find their inheritance has been dissipated without ever being enjoyed.

It is reasonable therefore to conclude that if a provision is to be written into the deed it should be that upon the expiration of the life estates of both Knight and his daughter, no matter which died first, the trustee should "pay, assign, transfer and set over the principal to and among the children of the said Clara W. K. Colford, then living, and the descendants of any child then dead, share and share alike, per stirpes, upon the principal of representation." The quoted language is the language actually used by Knight for one of the situations which he foresaw and provided for. If his deed is so read, the gift would have failed if the two daughters who survived Mrs. Colford had died without issue before Knight died. Until that question was resolved by Knight's death, he had an equitable reversion in the property, and an estate tax was payable thereon upon his death.

The decree of the Pennsylvania court, even if it had been a decision in a contested case, would have been of no assistance in this latter question of construction. The daughters who survived Mrs. Colford in 1924 survived Knight in 1936 and the court would have had no occasion, after Knight's death, to determine whether their interests had vested in 1924 or not until 1936.

It follows that the petition should be dismissed. It is so ordered.

WHALEY, Chief Justice, and JONES, Judge, concur.

WHITAKER, Judge (dissenting).

The controversy in this case arises over the inclusion within the gross estate of the deceased, Edward C. Knight, Jr., of property transferred by him in trust on the 28th day of June, 1912. The Commissioner of Internal Revenue included it in the decedent's gross estate on the theory that under the trust instrument the grantor retained a possibility of reverter and, therefore, that the transfer was "intended to take effect in possession or enjoyment at or after" the death of the decedent.

The trust instrument was executed at Philadelphia, Pennsylvania. The trustees were directed to pay the net income to the grantor for life, and upon his death to pay the net income to his daughter Clara W. K. Colford for her life, and upon the death of

his daughter, the grantor then being dead, to divide the principal among his daughter's children then living, and the descendants of any child who was dead, per stirpes. If, however, his daughter should die during the lifetime of the grantor "without leaving descendants her surviving," the property was to revert to the grantor; and if the daughter should die after the decease of the grantor "without leaving descendants her surviving," the principal was to be paid to such persons and in such proportions as the grantor should by last will and testament provide.

The grantor died on July 23, 1936; his daughter Mrs. Colford died on December 18, 1924, leaving surviving her two children, aged 15 and 11, respectively. These children survived the grantor.

No provision was made in the trust instrument for the contingency that the daughter might die before the grantor leaving issue, and her issue should later die during the lifetime of the grantor. In this event, defendant says the property would by operation of law revert to the grantor, and it says this possibility of reverter justified the Commissioner in including the value of the property in the grantor's gross estate.

Defendant says that the right of the grandchildren to receive any part of the estate was contingent upon their surviving their mother and the grantor because the trust provided that on the death of the grantor the principal should be transferred only to such children of the daughter as should be living at her death, or, if dead, to their descendants. Therefore, it says that if the daughter's children died without issue after the mother's death, but before the grantor's death, there was no one to whom the principal could be paid and, therefore, it would revert to the estate of the grantor.

In support of this defendant cites the case of Battenfeld v. Kline, 228 Pa. 91, 77 A. 416, 417. In this case the will under construction directed that the estate "shall be divided in equal shares between such of the children" of the testatrix and her husband "as shall then be living," and that "if any one or more of the said children shall then be dead leaving issue, such issue shall stand in the place of and be entitled to the share to which such child would have been entitled if such child had survived. * * *" The court held that the children's interest

was a contingent, and not a vested one, and that it did not vest until the death of the life tenants. The court said, however: "Of course this rule may be overborne by the addition of words of limitation showing that the testator's intention was that the children should take a transmissible interest; as where the gift is implied from a direction to divide among them or their heirs. Appeal of Muhlenberg, 103 Pa. 587."

If, therefore, the trust instrument in the case before us discloses an intention that the grantor's grandchildren should receive a vested interest upon the death of their mother during the lifetime of the grantor, there was no further possibility of reverter after the death of the grantor's daughter leaving issue. I think it does.

After having provided for the payment of the income from the trust to him for his life and to his daughter for her life, with remainder to the daughter's children living at the time of her death, the grantor then provided for the contingency that his daughter should die without leaving descendants surviving her, either in his lifetime or after his death. If she died during his lifetime, it was provided that the property should revert to his estate free from all trusts; if she died after he did, it was provided that the property should be disposed of as he should by will direct. No provision was made for the disposition of the remainder if at the time of the daughter's death she left issue surviving her and her issue died before the grantor did.

What conclusion is to be drawn from this? Is it not that if she died leaving issue the remainder was then to vest in her issue? And since he made no provision for the contingency of the death of her issue after his daughter's death but before his death, is it not to be supposed that he meant the remainder to vest in them upon his death? If he had not wanted it to vest in them upon her death, would he not have made provision for the disposition of the remainder in case of their death after their mother's death but before his? His mind was on the subject of the disposition of the property in case of the daughter's death without issue both in his lifetime and after his death, and he made provision for both. He must have thought of the contingency that his daughter might die during his lifetime leaving issue and that her issue might later die during his lifetime; but he made

no provision for the disposition of the remainder in that event. Why not? Because the remainder had already gone where he wanted it to go? It would seem so. He must have thought: The remainder would immediately vest in my daughter's issue, and, hence, there is nothing for me to dispose of at their death; the remainder becomes theirs on their mother's death.

If he had had in mind reserving to himself the disposition of the property if both his daughter and her issue should die before he did, there was as much reason for him to have provided for the termination of the trust in the case of the daughter's death leaving issue, and their later death in his lifetime, as in the case of his daughter's death without leaving issue surviving her. But it seems he was not concerned with disposing of the remainder if his daughter died leaving issue, but only in the case of her death without issue surviving her. This must have been because, once her issue survived her, he intended the remainder to vest in them.

Now, it is quite true that the trust instrument made provision for the disposition of the remainder only in the event that his daughter should outlive him, but the probate court entered a decree based upon a construction of the instrument under which her issue got the remainder although she predeceased him. In other words, he was understood to have intended that upon his daughter's death, whether before or after his death, the remainder interest should go to her children. I think we are bound by this decree.

If I have properly divined the intention of the grantor, he could not have intended this remainder interest to take effect in possession or enjoyment only on his death. It seems to me that what has been said belies an intention that he should part with all possession and control over the property only on his death. But suppose the grantor merely failed to take into consideration the contingency that his daughter might die before he did leaving issue surviving her, and that her issue might later die before he did, and so did not provide for the disposition of the estate in that event, can it be said that he "intended" to reserve a possibility of reverter? He could not have intended this if he did not think of this contingency. It is only when the transfer is "intended" to take effect at his death that it is properly includible in a decedent's estate. Central Hanover Bank and Trust Company v. United States, 103 Ct.Cl. ——, 58 F.Supp. 565, opinion on motion for a new trial, decided February 5, 1945; Estate of Hunnewell, 4 T.C. 1128.

In the view I take of the intention of the grantor, the case of Fidelity-Philadelphia Trust Co. et al. v. Rothensies, 324 U.S. 108, 65 S.Ct. 508, and the other cases cited by defendant are not in point.

I must respectfully dissent.

LITTLETON, Judge, concurs in the foregoing opinion.