Madden, Judge,
delivered the opinion of the court:
The plaintiffs are the administrators of the estate of Elisabeth A. Smith who died on February 13, 1945. Elisabeth A. Smith had been a life beneficiary of a trust created by the will of her grandfather, Hiram Sibley, whose will had been probated in Rochester, New York, in 1888. He had left a large estate and had devised the residue of it to trustees to receive the rents, issues and profits of the trust property and apply them to the use of his heirs during their lives, and, on the death of each heir, he devised the share of that heir to the heirs of that heir. Elisabeth A. Smith was one of the heirs of Hiram Sibley.
Among the assets of the Hiram Sibley trust were farms in Illinois. They were operated by the trustees, presumably from Hiram Sibley’s death in 1888 until Elisabeth Smith’s death in 1945. She left a substantial estate, and this case has to do with the federal estate tax on her estate. The question is whether certain personal property which was on the farms at the time of her death was her property, and thus taxable to her estate, or was property in which her interest terminated at the moment of her death, as it did in the land and buildings. If the latter, it became at the moment of her death the property of the remaindermen under the will of Hiram Sibley. Since he had designated as remaindermen *843 those who should be the heirs of Elisabeth Smith, the same persons would get the property in either case. But the Government would not get the same amount of taxes. Wherefore this litigation.
The property in question is listed in Schedule H-2 which is copied in our Finding 4. This schedule was a part of an accounting filed in July 1945, in the Surrogate’s Court in Rochester, by the trustees of the Hiram Sibley Trust. In that accounting showing the assets as of February 14, 1945, they said that in their previous accounts, the last of which had been in 1940, they had not segregated or designated any part of the assets in their hands as “working capital” having listed the assets only as principal and income. But in the 1945 accounting they did, in Schedule H-2 referred to above, segregate property valued at $259,994.08 as “working capital.”
The scheduled working capital consisted of grain, hay, silage, straw and livestock. The items other than the livestock had presumably been grown on the farms, and were on hand either for feeding or bedding the livestock, or for sale, as might seem prudent. The livestock had either been produced on the farms, or bought as young stock to be matured and fattened on the farms and then sold. This statement would not apply, accurately, to the horses and mules, and the dairy cattle. It will thus be seen that the working capital would take different forms at different times of the year. The large amount of hay and grain shown as of February 14, would, later in the year, have been converted into fatter cattle or hogs, or into money. The livestock item of the inventory would, by that time, have been more valuable, and growing crops would have been included. At another time of the year, most of the beef cattle might have been sold, and the money put in the bank, to await a favorable opportunity to purchase other cattle to fatten.
If we were concerned with an ordinary legal life estate and remainder, and the heirs of the life tenant were, as here, identical with the remaindermen, so that in any event they would succeed to the property on the death of the life tenant, the creditors of the life tenant, or the estate tax-gatherer, claiming that the property belonged to the estate of the life *844 tenant, would easily prevail as to the crops. Crops, even though unharvested, belong to the estate of the life tenant who dies before the harvest. Here Elisabeth Smith died on February 13, and the crops in Illinois had been harvested. As to the cattle and hogs, still assuming that we are dealing with a legal life tenant and remainderman, we do not have the necessary facts upon which to determine whose property they would be. If they had been bought from the proceeds of crops, or were the offspring or the proceeds of the offspring of livestock which were a part of the farm and its stock when the life estate and remainder were created, again they would belong to the life tenant. But if, or to the extent that, they were only replacements of animals that were a part of the property that was originally devised, they would, on the life tenant’s death, belong to the remainderman.
In the instant case, Elisabeth Smith had been the life beneficiary of the trust for fifty-seven years. What livestock or other property was on the farms in 1888, or at any later time down to 1940, we do not know. Whose money bought whatever stock there was, we do not know. In that situation, we could not say that the determination of the Commissioner of Internal Revenue that the property belonged to the life tenant was wrong.
The plaintiffs say that, whatever may be the law as to legal life tenants and remaindermen, it is irrelevant here, because Elisabeth Smith was not a legal life tenant, nor any sort of a life tenant, but only the life beneficiary of a trust. They point to Section 100 of the New York Real Property Law to the effect that a trust beneficiary has no interest in the trust property, but only a right to enforce the performance of the trust. Although they do not point to the analogy, it seems to us that they would regard a cestui que trust as in like status with a shareholder in a corporation. He is entitled to dividends if the directors declare dividends, but if they do not, he has no legal interest in the earnings which they allow to accumulate. If he is a life tenant and dies after earnings have been accumulated, but before dividends have been declared, his estate gets no part of the dividend.
The plaintiffs cite no New York decisions which treat a cestui que trust as being so completely divorced from any *845 property interest in the trust res as they insist that he is. Much has been written as to the nature of the interest of the beneficiary of a trust, whether it is a right in rem, a mere right in personam against the trustee, or a right in personam ad rem. Professor Scott in his textbook on Trusts, Vol. 1, Sec. 180, discusses the problem at length, as does Professor Bogert in his work on Trusts and Trustees, Vol. 1 A, Sections 183,184. Both authors conclude that the law has constantly moved in the direction of treating the beneficiary of a trust as having a property interest in the res.
The plaintiffs urge that the Surrogate in Rochester, New York, decided that the property in question was not a part of Elisabeth Smith’s estate. As we have pointed out above, the same persons got the property, whether they took as heirs of Elisabeth Smith or as remaindermen under the will of Hiram Sibley. There was, therefore, no adversary litigation of the question. The rights of a third party, the United States, are not foreclosed by such a judgment. Earle v. Commissioner, 157 F. 2d 501. Pennsylvania Co. v. United States, 104 C. Cls. 779.
The plaintiffs’ petition will be dismissed. It is so ordered.
Howell, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.