ESTATE OF DAISY F. CHRIST, DECEASED, ROBERT JOHNSON CHRIST, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 95357, 1342–64, 6182–65. Filed March 19, 1970.

494

*Donald B. Falconer*, for the petitioner.
*Roger A. Pott* and *Joseph A. Nadel*, for the respondent.

504

506

514

516

518

519

OPINION

*Income Tax Cases: Docket Nos. 95357, 1342–64*

The basic issues in the income tax cases are whether Daisy acquired the life interest in the portion of the trust attributable to Andrew's share of the community property (41.307 percent) in a transaction which constituted a purchase, and, if so, whether she is entitled to amortization deductions in the years in issue for the cost of acquiring the life interest.[2]

Petitioner contends that Daisy acquired the life interest in the portion of the trust attributable to Andrew's community property transferred to the trust in a transaction which constituted a purchase or a bargained-for sale or exchange. He contends that the widow was entitled to amortization deductions for the cost of acquiring the 41.307-percent life interest during the expected useful life of the interest acquired, which he asserts was equivalent to Daisy's life expectancy as of the date the life interest became effective to the widow. He argues that the value of the life interest acquired should be computed on the basis of a reasonably-expected yield of 8.2 percent from the trust assets and upon a life expectancy of a female lifetime annuitant of Daisy's age on April 16, 1952, which petitioner asserts is 12.68 years. He argues that the life interest in 41.307 percent of the trust, as well as the remainder interest in Daisy's portion of the community property should be valued as of April 16, 1952, the date of Andrew's death, because the widow received the income and benefits of her husband's share of community property as it accrued from the date of his death, and not from the effective date of her election on September 30, 1953. On the basis of a projected annual income from the trust of $26,300 (which according to petitioner is an effective annual yield of 8.2 percent) and a life expectancy of 12.68 years, petitioner asserts that the value of the

[2] Hereinafter, the portion of the trust attributable to Andrew's share of community property transferred to the trust will sometimes be referred to as Andrew's portion. The life interest in this portion will be referred to as the 41.307-percent life interest. The share of the trust attributable to Daisy's transfer of community property will sometimes be referred to as Daisy's portion of the trust.

41.307-percent life interest acquired by Daisy was $111,910, as of April 16, 1952. On the same basis, he asserts that the value of the remainder interest in Daisy's share of the community property as of April 16, 1952, was $28,668. Petitioner contends that Daisy's cost basis in acquiring the 41.307-percent life interest in the trust was equivalent to the value of this remainder interest irrevocably transferred by Daisy pursuant to her election to act in accordance with and to accept the benefits of her husband's will. He argues that this value represents Daisy's cost basis and he urges that this amount is amortizable over the course of her life expectancy, allegedly 12.68 years.

Respondent contends that Daisy did not acquire the 41.307-percent life interest by purchase or in a bargained-for sale or exchange. He argues that Daisy made a gift of the remainder interest in her share of the community property by her election because by her election she agreed to transfer her share of the community to the testamentary trust while retaining, in effect, a life interest in her share by virtue of the trust provisions giving Daisy a life interest in all of the trust property. Respondent contends that Daisy acquired the life interest in the 41.307 percent of the trust attributable to Andrew's share of the community by bequest or inheritance, and he argues that section 273 of the Code precludes the allowance of amortization deductions claimed by petitioner in connection with the widow's acquisition of the 41.307-percent life interest.[3] Respondent points to the gift tax return filed by Daisy in connection with her election to transfer her share of the community to the trust and to accept a life interest in all of the trust. He asserts that the gift tax return was indicative of a gift of the widow's property rather than a bargained-for sale or exchange, or purchase. In arguing that the life interest was acquired by bequest or inheritance, and not by purchase, respondent relies primarily on *Helvering* v. *Butterworth*, 290 U.S. 365 (1933).

In the event it is held that the transaction resulting from Daisy's election constituted a purchase of the 41.307-percent life interest, respondent argues that petitioner is not entitled to amortization deductions because there is no provision of the Code providing for such deduction. He also argues that if the petitioner is entitled to amortization deductions, the cost of acquiring the life interest is equivalent to its value as of the date of the widow's election, September 30, 1953, which respondent contends was $34,407.10. Respondent objects to petitioner's method of valuing the 41.307-percent life interest acquired

---

[3] SEC. 273. HOLDERS OF LIFE OR TERMINABLE INTEREST.

Amounts paid under the laws of a State, a Territory, the District of Columbia, a possession of the United States, or a foreign country as income to the holder of a life or terminable interest acquired by gift, bequest, or inheritance shall not be reduced or diminished by any deduction for shrinkage (by whatever name called) in the value of such interest due to the lapse of time.

and the remainder interest in Daisy's portion of the community property transferred to the trust. He contends that the property interests should be valued as of September 30, 1953, the effective date of the election and the transfer of the property interests, and that the proper valuation of the interests is to be determined by the use of table 1 of section 20.2031–7(f), Estate Tax Regs. (or the same table employed in the Gift Tax Regs., table 1, sec. 25.2512–5(f)). On this basis, respondent asserts that the value of the 41.307-percent life interest was $34,407.10, and the value of Daisy's remainder interest transferred to the trust was $175,917.94.

After careful consideration of the arguments of the parties, it is our judgment that the transaction resulting from Daisy's election constituted a purchase of the life interest in the 41.307 percent of the trust attributable to Andrew's share of the community transferred to the trust.

The parties are agreed that September 30, 1953, was the effective date of Daisy's election to accept the provisions of her husband's will and to act in accordance with its terms. The parties are also agreed that although Daisy transferred her entire share of the community property to the testamentary trust by her election, she, in effect, transferred only her remainder interest in that community property, because the life interest is that property was distributable to her under the terms of the trust. It is our finding that the transfer of this remainder interest in the transaction resulting from her election was not a gift for the purpose of determining the income tax questions involved in these cases, docket Nos. 95357 and 1342–64. Daisy's election to transfer her share of the community property to the trust and to accept the benefits provided for by the trust did not result from charitable impulses or from a detached and disinterested generosity. It is our view that the transfer proceeded from the incentive of anticipated benefits of an economic nature and that the widow's motives primarily involved concern for her own economic well-being. It was the incentive of receiving the income from all the community property of the spouses transferred to the trust which prompted Daisy to elect to have her share of the community pass to the trust in accordance with Andrew's will. She was nearly 75 years old on the effective date of her election, September 30, 1953. If she had not made the election to accept the provisions of Andrew's will, her means of support would have consisted primarily of her vested share of the community property. Prior to September 30, 1953, Daisy had the option of taking her share of community property only, to which she could look in the future years of her life for support, or of electing to have her share of the community

pass into the testamentary trust, in which case she would be entitled to the income from all of the community property of the spouses transferred to the trust. In addition, she could derive the intangible benefit of the management ability of the trustee, her son Robert, in handling the trust property. In making the election it was her dominant intent to acquire the benefits of the life interest of her husband's share of the community while at the same time retaining a life interest in her own portion of the community.

Respondent himself has described the transaction on brief as "one in which Daisy transferred her remainder interest in *her own community one-half* into trust *in return for* a life estate in Andrew's share of the community," and he has noted that "she received it [the life estate in Andrew's share of the community] only upon her satisfying a condition precedent: *to wit,* her election to have *her own share* of the community pass under Andrew's will." (Emphasis supplied.)

It is concluded that Daisy purchased the 41.307-percent life interest attributable to Andrew's share of the community transferred to the trust. In our opinion the principles set forth in *Gist* v. *United States,* 296 F. Supp. 526 (S.D. Cal. 1969) ; *Commissioner* v. *Siegel,* 250 F. 2d 339 (C.A. 9, 1957), affirming 26 T.C. 743 ; and *Allen M. Early,* 52 T.C. 560 (1969), are determinative of the questions involved here.

In *Gist* v. *United States, supra,* the U.S. District Court for the Southern District of California dealt with the same question, namely, whether a widow was entitled to deductions for amortization of the cost of acquiring a life estate in a testamentary trust. There, the taxpayer, a widow and a resident of California, elected to have her share of community property pass under her husband's will to a testamentary trust provided for under the will. The widow was to receive the entire income of the trust for the duration of her life. The court there stated the following (pp. 528, 529) :

It is now clear that a taxpayer who purchases a life estate may amortize his cost over the period of the beneficiary's life expectancy by ratable annual deductions. 26 U.S.C.A. (I.R.C. 1954) § 167 ; Rev. Rul. 62–132, 1962–2, Cum. Bull. 73 : Bell v. Harrison, 212 F. 2d 253 (7th Cir. 1954) ; Commissioner v. Fry, 283 F. 2d 869 (6th Cir. 1960). The fact that the life estate here was created upon the exercise of the widow's election does not alter the fact that plaintiff may be a purchaser for value as would be one to whom she sold her life estate for cash.

For purposes of the federal estate and gift tax, the exercise of a widow's election where the estate consists entirely of community property is considered a bargained-for sale or exchange made for consideration, i.e., a purchase. Commissioner v. Siegel, 250 F. 2d 339 (9th Cir. 1957) ; Vardell's Estate v. Commissioner 307 F. 2d 688 (5th Cir. 1962). The holding in United States v. Stapf, 375 U.S. 118, 84 S. Ct. 248, 11 L. Ed. 2d 195 (1963), and the principles therein espoused are not inapposite.

While no income tax case dealing with a widow's election holds that the widow can amortize the cost of her life estate, in light of the above cases it would be illogical to conclude that she cannot.

     *        *        *        *        *        *        *

It is undisputed that plaintiff's election to take under the will was bona fide and not based on tax avoidance motives. Therefore, this court finds that plaintiff purchased a life estate in the trust created under the will of her husband, and that she is entitled to amortize the cost of what she purchased by annual deductions.

The District Court in *Gist* cited and relied in part on *Commissioner* v. *Siegel, supra*, in determining that the taxpayer was entitled to amortization deductions, amortizing the cost of acquiring the life estate. The *Siegel* case related to a gift tax, but it is important because it details the nature of transactions such as the one involved in the instant cases. Under facts quite similar to those of the present cases, the Court of Appeals for the Ninth Circuit concluded that a widow's election to accept a life interest in a testamentary trust created pursuant to her husband's will in return for the transfer of her share of the community to the trust was a transaction which constituted a contract under California law which was binding upon the surviving spouse. The court held that the life interest in the trust as well as other benefits received under her husband's will was consideration received by the widow in return for her election to transfer her share of the community property to the trust, and that for the purpose of the gift tax, only the amount by which the value of the property transferred by the widow to the trust exceeds the value of the consideration received should be included in computing the amount of the gift. It is clear from the court's opinion that the transaction was not strictly donative, but that it was entered into by the widow only "after full consultation between her and the trustees" with the purpose of maintaining her high standard of living. As in *Siegel*, the widow here elected to transfer her share of the community to the trust primarily for the purpose of maintaining her standard of living. Daisy considered it the best way to provide a means of support for herself, and essentially her motives were not donative. The transaction was carried out primarily for her own economic self-interest and we consider it a bargained-for sale or exchange. Respondent's contention that the gift taxes paid by Daisy are indicative of a donative intent and a gift rather than a purchase is without merit, for it has long been recognized that donative intent is not a necessary element to make a transfer subject to a gift tax. *Commissioner* v. *Wemyss*, 324 U.S. 303 (1945); *Eleanor A. Bradford*, 34 T.C. 1059 (1960). The mere fact that a gift tax was imposed on Daisy does not require us to conclude that the transfer of her remainder interest was by gift and not the consideration for the purchase of the 41.307-

percent life interest in the trust attributable to Andrew's share of the community.

In *Allen M. Early*, *supra*, a case involving a question similar to those of these income tax cases, this Court held that the petitioners there acquired a joint life interest in a percentage of a trust "through the sale or exchange of property and not by gift, bequest, or inheritance," and we there allowed amortization deductions based on the cost of acquiring the life interest which in that case was equivalent to the value of the acquired life interest, as of the date of acquisition.

In arguing that Daisy did not acquire the life interest in 41.307 percent of the trust by purchase, respondent relies upon the decision of *Helvering* v. *Butterworth*, *supra*. In *Butterworth*, the Supreme Court, in determining the ultimate question of whether a trust was entitled to deductions for amounts distributable to a widow, had concluded that the widow who elected to accept the income of a testamentary trust in lieu of her statutory rights in her deceased husband's property was a beneficiary and not a purchaser of the income interest in the trust. The case is not applicable to the present case. It is distinguishable factually in that it dealt with a widow's election to take a life interest in lieu of her statutory share in *her husband's property*. In the cases here, the widow's election constituted an agreement to transfer *her own property* in which she had a vested interest (not a right to her husband's property) in exchange for the benefits provided for her in Andrew's will. Under California law, the widow is considered to have a "present, existing and equal interest" during coverture in the community property. She is considered the owner of her share of the community. The *Butterworth* case has been distinguished and found inapplicable to situations involving a widow's election under California law in both *Gist* v. *United States*, *supra* at 529, and in *Commissioner* v. *Siegel*, *supra* at 346 fn. 24, and it merits no further discussion here.

The question remains whether Daisy is entitled to amortization deductions, and, if so, what is the cost basis and the useful life of the amortizable interest.

Once it has been determined that the taxpayer acquired the life interest by purchase, there can be no serious question of the taxpayer's right to ratable, annual deductions based on the cost of the life interest and based on the life expectancy of the original holder of the life estate. See Rev. Rul. 62–132, 1962–2 C. B. 73; *Commissioner* v. *Fry*, 283 F. 2d 869 (C.A. 6, 1960); and *Bell* v. *Harrison*, 212 F. 2d 253 (C.A. 7, 1954). The Commissioner has acquiesced in the decisions in the *Bell* and *Fry* cases, wherein, in each case, a remainderman purchased the life estate which preceded the remainder interest, and it was held that the remainderman was entitled to amortize the cost of purchasing the

life estate. Having decided that Daisy acquired her life interest by purchase, there is no basis for distinguishing Daisy's right to amortization deductions from those of the taxpayers in the *Fry* and *Bell* cases. See also *Allen M. Early, supra*.

It is our finding and conclusion that Daisy's cost basis is limited to the value of the 41.307-percent life interest acquired, valued as of September 30, 1953. The value of this life interest as of that date was $34,413.77. Petitioner's valuation of the property interests exchanged cannot be sustained. Nor can we sustain his contention that the cost of acquiring the 41.307-percent life interest is equivalent to the fair market value of the remainder interest in Daisy's share of the community transferred to the trust.

When Daisy made her election on September 30, 1953, the consideration she received consisted of a life estate in Andrew's portion of the trust, as of September 30, 1953, and, in addition, certain amounts of the benefits and income from Andrew's portion of the community which accrued during the period between his death and the distribution of his estate to the trust on September 30, 1953. See *Commissioner* v. *Siegel, supra*. It is not disputed and indeed it is recognized by respondent on brief that Daisy had to elect to have her share of community property pass to the trust as a condition precedent to receiving the benefits from the trust. If Daisy did not elect to act in accordance with her husband's will, she would not only have foregone the benefits of the 41.307-percent life interest, but she would also have given up the opportunity to receive the benefits resulting from her husband's portion of the community, to which she would not otherwise have been entitled under the laws of descent and distribution in California, which accrued during the period between Andrew's death on April 16, 1952, and the date of her election, September 30, 1953. We find and conclude that the benefits accruing during that period, which Daisy would not otherwise have been entitled to under the laws of intestacy in California, were a part of the consideration received. The amount of income and other benefits accruing during the interim period from Andrew's property has not been shown on brief or at the trial. Nor has it been shown what part of those benefits were received by the widow as the result of her election, and which she would not otherwise have received if she had not elected to have her share of the community pass under Andrew's will. However, this amount is of no concern to us in the income tax cases. Our concern here is with the determination of the cost of acquiring the 41.307-percent life interest in the trust, which commenced on September 30, 1953, for the purpose of determining the allowable deductions computed upon a cost basis and an expected useful life of that property interest.

Petitioner is in error in the valuation of the 41.307-life interest received by the widow and the remainder interest in her share of the community property transferred to the trust. There is an extensive discussion of the valuation of the property interests in the related estate tax case and it need not be repeated here. Briefly, however, it must be said that Daisy at the time of her election could not have reasonably expected or anticipated an annual yield of 8.2 percent, as petitioner has contended, because of the trustee's very broad powers of sale and investment which precluded the widow from reasonably anticipating what securities or other property would constitute the income-producing assets of the trust and, consequently, what the yield of the trust assets would be. Also, petitioner's calculation of a projected 8.2-percent yield fails to consider the expenses of administering and maintaining the trust. It is also concluded that the life expectancy of 12.68 years based on the life expectancy of a female annuitant of Daisy's age on April 16, 1952, is inapplicable here because Daisy was not acquiring an annuity, but rather a life estate or life interest in a trust. Finally, in valuing a 41.307-percent life interest which was acquired as of September 30, 1953, we think it is clear that Daisy's life expectancy should be based on her age as of this date, rather than as of the date of Andrew's death.

We have found that the value of the 41.307-percent life interest as of September 30, 1953, was $34,413.77, and the value, as of that date, of the remainder interest was $175,901.27. It is our view that the cost of acquiring the 41.307-percent life interest is limited to its value, $34,413.77. To the extent that the value of the remainder interest transferred to the trust exceeded the value of the life interest received, plus the other consideration received, we consider it as essentially a gift and not a part of the cost basis, in light of the fact that the remainder of the community property was to be distributed to Robert or his issue, surviving at the termination of the trust. We think this conclusion is consistent with *Gist* v. *United States, supra; Allen M. Early, supra,* and also with the principles set forth in *Commissioner* v. *Siegel, supra,* even though it is recognized that *Siegel* dealt with a gift tax rather than the income tax questions involved here.

We sustain respondent in the use of table 1 of section 20.2031–7 (f), Estate Tax Regs., in valuing the life and remainder interests. For a person of Daisy's age on September 30, 1953, the life expectancy implicit in table 1 is 7.55 years, and it is concluded that ratable annual amortization deductions for the 41.307-percent life interest acquired by Daisy are allowable for 7.55 years beginning with the inception of the trust on September 30, 1953.

Finally, with respect to respondent's determinations of deficiencies in income taxes for the years 1960 and 1961, there is the question of whether the agreement executed between Daisy and Robert, through which Daisy allegedly transferred her entire life interest in the portion of the trust attributable to the transfer of her share of community property to the trust in exchange for a fixed, lifetime, private annuity, should be recognized for tax purposes. It is petitioner's position that the agreement was a valid contract which constituted a sale or exchange of the life interest in 58.693 percent of the trust for the annuity, and petitioner contends that the income realized annually by Daisy is includable in her gross income in her taxable years 1960 and 1961, only to the extent that the annual annuity payments exceeded Daisy's alleged cost or investment.

Petitioner maintains that Daisy's cost or investment was equivalent to the value of her life interest, as of the date of the agreement, in the portion of the trust attributable to her share of community property transferred to the trust (i.e., the value of the life interest in 58.693 percent of the trust). According to petitioner, the total investment based on the value of this life interest as of December 9, 1959, amounted to $110,030.57, and the amount of the investment deemed excludable in each year was computed by applying a percentage, based on the total cost ($110,030.57) expressed as a percentage of the total expected return ($220,599.46), to the annual annuity payments received.

Respondent has determined that all of the distributable net income of the testamentary trust for its taxable years 1960 and 1961 is includable in Daisy's income in her taxable years 1960 and 1961. Respondent contends that the agreement of December 9, 1959, was not a valid enforceable contract, and he argues that it was a sham effected by the parties merely for tax avoidance purposes. He argues that Daisy executed the agreement, in which she purportedly transferred her entire life interest in 58.693 percent of the trust, in violation of the spendthrift provisions of the trust, and respondent argues further that Robert violated his fiduciary duties by entering into the alleged contract. Respondent maintains that the alleged contract was void under California law or at least revocable or voidable by operation of law and he urges that we not recognize the attempted transfer.

After carefully considering the evidence presented, including the California cases cited by the parties with respect to spendthrift trusts and the trustee's duty to not deal with the trust property for his own benefit, it is concluded that the agreement executed by Daisy did not constitute a valid enforceable contract under California law and that it did not constitute an effective transfer of her life estate in the portion of the trust attributable to her share of the community property. It is

concluded, further, that all of the distributable net income in the years 1960 and 1961 is includable in Daisy's income for her taxable years 1960 and 1961. We are not unmindful of the California cases which have held that a spendthrift provision of a trust created by a grantor could not operate to restrict the grantor's right to alienate or transfer by anticipation the income interest. *Nelson* v. *California Trust Co.*, 33 Cal. 2d 501, 202 P. 2d 1021 (1949) ; *Bixby* v. *California Trust Co.*, 33 Cal. 2d 495, 202 P. 2d 1018 (1949). We do not think those cases are apposite here. The reason for not enforcing the spendthrift provision in the case of a grantor who has created a trust in which he is the income beneficiary is to prevent the grantor from effecting a simple means of avoiding the claims of his creditors while at the same time maintaining the beneficial enjoyment of the property. None of the California cases cited by petitioner with respect to grantor's power to alienate his income interest in a trust containing a spendthrift clause approach the facts involved in the instant cases. As we have said before, under the unusual facts of this case, Daisy, in transferring her share of the community property to the trust, was not acting merely as a settlor or as a grantor. Her actions in making the transfer were not strictly donative. In making her election she entered into a contract which was binding upon her. In the case of *Flanagan* v. *Capital National Bank of Sacramento*, 213 Cal. 664, 3 P. 2d 307, 308 (1931), a noted case of the Supreme Court of California, and cited by the Court of Appeals for the Ninth Circuit in *Commissioner* v. *Siegel*, the following was stated in regard to a widow's election in California:

The "waiver" was in fact a contract, by the terms of which plaintiff accepted certain devises and bequests under the will in lieu of any right she might have in any community property. Such an agreement is clearly supported by consideration and is binding upon plaintiff irrespective of any element of estoppel arising from the testator's change of position in reliance upon the representation contained in the instrument.

See also *Siegel*, wherein a widow's election to surrender her share of community property and to accept under the provisions of her deceased spouse's will was viewed as a contract supported by adequate consideration. Because Daisy's election constituted a binding contract, we are of the opinion that under California law any attempt by her to anticipate the income resulting from her life estate in the testamentary trust or any attempt to transfer or assign her interest in the trust, even if that interest were attributable to her share of the community property transferred to the trust, would constitute a breach of conract. Therefore, it is our conclusion that the attempted transfer of her life estate in 58.693 percent of the trust was not a valid enforceable contract under California law, and we will not give it recognition here. It is noted further in this regard that petitioner has admitted

that the attempted transfer of Daisy's income interest in a portion of the trust was motivated by tax considerations. It is our finding that the attempted assignment had no substance or purpose other than an attempt to effect a reduction of Daisy's income and estate taxes. Therefore, it is concluded that the attempted assignment of Daisy's life interest in 58.693 percent of the trust should not be recognized for Federal tax purposes. In light of our findings and conclusions, we find it unnecessary to go further into the delicate question of whether the attempted transfer was invalid as a breach of the trustee's fiduciary duties.

With respect to the income tax cases, it is held that the net income of the trust for the years 1957, 1958, 1959, 1960, and 1961, in the amounts of $26,618.44, $26,964.53, $27,073.28, $48,777.51, and $27,048.76, was includable in Daisy's gross income in her respective taxable years. Annuity income in the amounts of $11,512.53 and $10,553.56 reported in Daisy's returns for 1960 and 1961, respectively, is not recognized and is eliminated from her gross income. Annual amortization deductions of $4,558.12 are allowed for Daisy's taxable years 1957 through 1960. An amortization deduction of $1,594.34 is allowed for 1961.

### Estate Tax Case: Docket No. 6182-65

The basic question in the estate tax case is whether Daisy's transfer of her share of community property to the trust, while retaining a life estate in that property, constituted a bona fide sale of her remainder interest for less than adequate and full consideration in money or money's worth, so that the value as of the date of her death of her share of the community property, less the value of the consideration received in the transaction, is includable in her gross estate under sections 2036 and 2043 of the Code.

The parties are agreed that by virtue of her election Daisy in effect made a transfer of her remainder interest in her share of the community property, while retaining a life estate in that share. Respondent has determined that Daisy's transfer of her remainder interest was a transfer for less than adequate and full consideration in money or money's worth, and, by application of sections 2036 and 2043 of the Code, respondent has included in Daisy's gross estate the value of Daisy's share of the community property transferred to the trust, valued as of the date of her death, less the value of the consideration received therefor, valued as of the date of the transfer of the property interests.

The fundamental controversy here involves the valuation of Daisy's remainder interest transferred to the trust and the valuation of the life income interest in Andrew's portion received by Daisy by virtue

of her election. Respondent relies on his regulations, specifically section 20.2031-7(f), Estate Tax Regs., in valuing Daisy's remainder interest transferred to the trust and in valuing the life estate received by Daisy in Andrew's portion of the trust (41.307 percent). Respondent urges that the consideration received by Daisy upon her election was the life estate in Andrew's portion. Respondent has valued this life estate as of September 30, 1953, at $34,407.10 (based on a rounded-off figure for the value of the corpus of the trust on September 30, 1953, of $383,000, rather than the more accurate value, as determined by respondent, of $383,009.38, and based on a 41.3-percent interest in the trust, rather than the more accurate 41.307 percent of the trust which the parties have stipulated is the part attributable to the transfer of Andrew's share of the community property to the trust). Respondent determined the value of Daisy's remainder interest as of September 30, 1953, to be $175,917.74. Respondent contends that because the value of the remainder interest transferred exceeded the value of the life estate in Andrew's portion, the transaction did not constitute a bona fide sale for adequate and full consideration in money or money's worth.

Petitioner, on the other hand, contends that Daisy received full and adequate consideration in money's worth in the transaction. Petitioner argues that table 1 of section 20.2031-7(f), Estate Tax Regs., employed by respondent in valuing the property interests involved, is based upon factors for life expectancies and for annual yield which are not applicable to the case at hand. Petitioner asserts that the table should not be applied because it does not make a differentiation between male and female life expectancies, contending that a female's life expectancy is longer under situations such as are involved herein.

Petitioner urges that the life expectancy of a female annuitant of Daisy's age as of the death of Andrew on August 16, 1952, as reflected in section 1.72-9, table 1, of the Income Tax Regs., is more appropriate under the circumstances in the present case, because it reflects the difference in life expectancies between male and female annuitants. According to petitioner, on the basis of table 1, sec. 1.72-9, Income Tax Regs., Daisy's life expectancy as of the date of Andrew's death was approximately 12.6 years.

Petitioner also urges that the compound interest factor of 3½ percent (reflecting an annual yield of 3½ percent, compounded annually, for a life estate), employed in table 1 of section 20.2031-7(f), Estate Tax Regs., is inapposite here. Petitioner contends that as of the date of her election, September 30, 1953, there was a reasonable expectation of a minimum annual yield from the portion of the trust attributable to Andrew's contribution of community property in the amount of

$10,862 (including the rental value of the family residence) or, in effect, an annual yield of 8.2 percent based on the value of the trust corpus as of September 30, 1953, which petitioner asserts was $319,842.98, the amount which the parties have stipulated was the value of the assets distributed to the trust on April 16, 1952, the date of Andrew's death.

It is our conclusion that respondent was correct in his use of table 1, section 20.2031-7(f) of the regulations, for determining the value of Daisy's remainder interest transferred to the trust and the value of the life estate received by Daisy in the portion of the trust attributable to Andrew's community property transferred to the trust. It is recognized, of course, that petitioner has the burden of proving that respondent's valuation of the property interests involved was incorrect, and where, as in this case, respondent has relied upon his Estate Tax Regulations for valuing life estates and remainder interests, it is petitioner's burden to show that the regulations employed are not applicable under the circumstances. In the present case, petitioner has not carried his burden, and, therefore, respondent is sustained in his use of table 1, sec. 20.2031-7(f), Estate Tax Regs., to value the property interests involved.

The use of a life expectancy factor based on the life expectancy of a female annuitant as reflected in table 1 of section 1.72-9, Income Tax Regs., is clearly inapplicable. Daisy transferred a remainder interest to the trust. While it is true that she purchased the life estate, she cannot be considered in any sense a purchaser of an annuity. In contrast to the normal, ordinary annuity, Daisy's life estate in the trust did not assure her of a fixed annual income or a fixed minimum annual income. The income which was to be distributed to Daisy under the terms of the trust could fluctuate depending on the vagaries of the businesses whose stocks constituted the principal assets of the trust. Moreover, part of the trust assets consisted of the family residence, a non-income-producing asset, the use of which Daisy was entitled to for her life under the terms of the trust. The right to the use of a non-income-producing asset is not ordinarily a benefit provided under an annuity contract. Moreover, the choice or election to which Daisy was put by her husband is really not analogous to the purely voluntary actions of an individual who enters into an annuity contract. Since the Commissioner's table 1, sec. 1.72-9, is based upon composite studies of the life expectancies of ordinary, voluntary annuitants purchasing a commercial annuity, it is our judgment that it is inapplicable here in valuing the property interests transferred or acquired by Daisy where Daisy was confronted with the choice of taking her share of the community property or of transferring that share of community

property to the trust and receiving a life estate in the entire corpus of the trust.

Moreover, petitioner has failed to introduce any evidence by an expert in actuarial computations, in the construction of life expectancy tables, or in the determination of life expectancies based on statistical compilations of rates of mortality. No evidence has been presented from which we could conclude that for the purposes of valuing a life estate a differentiation should be made between the life expectancy of a male or female of the same age, and, therefore, petitioner's argument in this regard cannot be accepted. It is concluded that the life expectancy factor in table 1 of section 20.2031–7(f) for valuing a life estate and a remainder interest was properly applicable in valuing the property interests exchanged or transferred by virtue of Daisy's election on September 30, 1953.

In contending that the compound interest factor of 3½ percent for life estates in table 1, sec. 20.2031–7(f) (reflecting an average annual yield of 3½ percent), is inapplicable under the facts involved in this case, petitioner relies on the principles set forth in *Ithaca Trust Co.* v. *United States*, 279 U.S. 151 (1929); *Simpson* v. *United States*, 252 U.S. 547 (1920); *United States* v. *Provident Trust Co.*, 291 U.S. 272 (1934); *Hanley* v. *United States*, 63 F. Supp. 73 (Ct. Cl. 1945); *Estate of Lillian B. Gregory*, 39 T.C. 1012 (1963); *Huntington National Bank*, 13 T.C. 760 (1949), and other cases. Petitioner argues on the basis of the aforementioned authority that the use of the tables in the Estate Tax Regulations for valuing a life estate or remainder interest is merely evidentiary in nature, and where the use of the table will produce a result *substantially* at variance with the facts, its use is unauthorized. Petitioner recognizes that he has the burden of proving that the use of the table will produce a result substantially at variance with the facts, but petitioner maintains that he has made a showing that as of the date of Daisy's election, a minimum annual yield of approximately 8.2 percent could be reasonably expected, as opposed to the annual yield for a life estate implicit in table 1 of section 20.2031–7(f) of 3½ percent.

We agree with petitioner's interpretation of the law with respect to the application of the table in the regulations for valuing a life estate or a remainder interest in property placed in trust. In *Hanley* v. *United States*, *supra*, the Court of Claims, in determining the value of a life estate and a remainder interest for estate tax purposes, stated the following (pp. 80, 81):

The Commissioner, on the other hand, contends that his Regulation had the force and effect of law and that, therefore, the computation of the value of the life estate in accordance with the table referred to in these Regulations was proper.

We think the plaintiff is correct in saying that the use of this table is unauthorized and improper whenever its use produces a result substantially at variance with the facts.

These principles have been cited with approval by this Court. See *Huntington National Bank, supra,* where, with respect to the use of the table in the regulations for valuing a life estate, and a remainder interest transferred to charity, it was said, at page 772: "Under the facts herein, the yield was approximately 3½ per cent. The use of the table based upon the rate of 4 per cent was erroneous because at variance with the facts."

Of course, it is recognized that in determining whether the use of the table in the regulations will produce a result substantially at variance with the facts, the relevant facts in considering the valuation of the property interests created or transferred, are those facts existent at the time the taxable act was effected. *Ithaca Trust Co.* v. *United States, supra.* Valuation is not to be determined by hindsight, and "later arising facts are relevant in the determination only if they were anticipatable or could be reasonably expected as of the date of the taxable event." See *Estate of Lillian B. Gregory, supra* at 1021. In *Ithaca Trust Co.* v. *United States, supra* at 155, it was said:

Therefore the value of the thing to be taxed must be estimated as of the time when the act was done. But the value of property at a given time depends upon the relative intensity of the social desire for it at that time, expressed in the money that it would bring in the market.

Although in agreement with petitioner's view of the law regarding the question of valuation, we cannot sustain petitioner in his contention that table 1, sec. 20.2031–7(f), Estate Tax Regs., is inapplicable here. We find that petitioner is in error in his allegation that as of the date of Daisy's election an annual yield from the trust of 8.2 percent could be reasonably expected. And, it is found and concluded that there has been no showing that table 1, sec. 20.2031–7(f), of the regulations, with its 3½-percent interest factor, would produce a result substantially at variance with the facts of this case so that the use of table 1 for valuing the life estate and remainder interest involved would be precluded.

Petitioner has erred in his calculation or assertion of a reasonably expected annual yield from the trust of 8.2 percent. The expected yield of 8.2 percent alleged by petitioner is based upon the income which would have been produced and received by the trustee in the calendar year 1953, if the trust assets which were distributed to the trustee pursuant to the Probate Court's decree on September 30, 1953, had been held by the trustee throughout the entire year 1953. Petitioner asserts that the annual income which would have been produced if the trust

assets were held during the calendar year 1953 amounted to $26,300, based on the sum of the actual dividends paid in 1953 on the shares of stock which as of September 30, 1953, were distributed to the trust ($21,500) and the fair rental value of the residence (which petitioner alleges to be $400 per month, or $4,800 per year). To arrive at the alleged expected annual yield petitioner expressed this estimated annual income of $26,300 as a percentage of the fair market value of the trust assets as of September 30, 1953, which petitioner asserts was approximately equivalent to the fair market value as of the date of Andrew's death, April 16, 1952, of the assets distributed to the trust on September 30, 1953. The parties have stipulated that the fair market value of the assets as of April 16, 1952, which were subsequently distributed to the trust on September 30, 1953, was $319,842.98, and petitioner asserts that this amount was the value as of September 30, 1953. On the basis of petitioner's projected annual income of $26,300 and a fair market value of the trust corpus on September 30, 1953, of $319,-842.98, the projected annual yield is alleged to be 8.2 percent. For several reasons we find that petitioner's projected yield of 8.2 percent could not have been reasonably expected at the date of Daisy's election and the transfer of the property interests involved.

First, petitioner's assertion that the fair rental value of the family residence was $400 per month in 1953 appears to us on the basis of the facts to be unreasonably high. We are unconvinced by the testimony of petitioner's witness, Robert F. Atkinson, a real estate broker and an appraiser, as to the fair rental value of the home in 1952 and 1953. The witness did not begin his appraisal work until 1955, and his knowledge of the Christ residence in 1952 was based upon his general familiarity with the neighborhood as a newsboy, during his youth, and upon his interest in the acquisition for construction purposes in 1952 or 1953 of a segment of the land on which the Christ residence was situated. Atkinson did not become familiar with the Christ property in his capacity as a real estate broker or as an appraiser until 1960 or 1961. In our opinion it is more reasonable to value Daisy's life estate in the family residence under the trust on the basis of table 1, sec. 20.2031–7(f), of the regulations. It is our finding that the annual fair rental value of the residence was $1,750, based on the basis of the 3½-percent interest factor in table 1, sec. 20.2031–7(f), and based on our finding that the fair market value of the residence and the property on which it was situated was $50,000, as of September 30, 1953.

For the purpose of determining the reasonably expected annual income of the trust in order that the expected annual yield may be calculated, the expected income from the cash in the amount of $10,980.58 distributed to the trust should also be included. The income produced

by the $10,980.58 in cash distributed to the testamentary trust invested at 3½ percent provided in table 1 for a life estate results in an annual income of $384.32.

Petitioner's attempt to show that the reasonably expected yield from the trust was 8.2 percent rather than the 3½ percent implicit in the regulations for valuing life estates and remainder interests, turns upon his projection of future income to be produced by the trust on the basis of the income which would have been produced by the trust assets and received by the trust if the trustee had held the distributed trust assets for the duration of the calendar year 1953. One question is whether the income which would have been produced and received by the trust in 1953 if the trust assets had been held during the entire year, can be used as a basis for projecting the future expected annual income from the trust. Primarily, petitioner has relied on brief upon his projected yield of 8.2 percent, computed on the basis of the income which allegedly would have been produced by the trust in one year, 1953, but he has also introduced the evidence of the dividend income which would have been produced and received on the shares of stock distributed to the trust for the years 1948 through 1953, inclusive, for the purpose of projecting alternatively an expected yield on the basis of average annual income which would have been generated by dividends actually paid by the corporations if the shares of stock transferred to the trust on September 30, 1953, had been held by the trustee during those years. The alternative question is whether the valuation of the property interests should or can be computed upon an expected or projected yield based upon the average annual income which would have been produced by the assets distributed to the trust on September 30, 1953, had they been held in trust during the years 1948 through 1953, inclusive.

It is our finding that the annual income which would have been produced by the trust assets if they had been held in trust during the entire year 1953 would be the amount of $23,664.72, which, expressed as a percentage of the fair market value of the entire trust corpus as of September 30, 1953 ($383,009.38), is 6.18 percent. It is also our finding that the average annual income which would have been produced by the trust assets if they had been held in trust during the years 1948 through 1953, inclusive, would be the amount of $20,991.77, which expressed as a percentage of the fair market value of the trust corpus as of September 30, 1953, is 5.48 percent. Petitioner's computation of an annual percentage yield of 8.2 percent must be rejected for several reasons. One, petitioner's asserted annual income for 1953 of $26,300 is incorrect because of the overvaluation of the fair rental income ($4,800 per year rather than $1,750). Also, petitioner's computation fails to in-

clude the value of Daisy's life estate in the cash distributed to the trust. Thirdly, the annual yield of 8.2 percent is based on an erroneous fair market value of the trust property on September 30, 1953, of $319,842.98. We have found that the fair market value of the trust assets as of September 30, 1953, was $383,009.38, based on respondent's determination of the value of the trust assets as of that date, which we must accept because petitioner has made no showing that the value of the assets was other than the value determined by respondent.

Although an annual percentage yield from the trust assets of 6.18 percent or 5.48 percent would have resulted, depending on whether the annual income for 1953 or the average annual income for the years 1948 through 1953, inclusive, is used to compute the yield, it is concluded that under the facts of the present case an annual yield of 6.18 percent, or of 5.48 percent, could not reasonably be expected or projected as of the applicable valuation date, September 30, 1953.

Under the terms of the trust Robert, as trustee, was given very broad powers in the administration of the trust. The provisions in Andrew's will relating to the trust gave Robert "full power and authority * * * to do any and all acts which he may deem necessary * * *, including, without limiting the generality of the foregoing, power upon such terms and conditions as the trustee deems advisable (1) to sell, exchange, repair, partition, divide, consent to partition or otherwise dispose of any property at any time forming a part of the trust estate, * * * (iv) to invest and reinvest any moneys at any time forming a part of the trust estate in such securities or property as the trustee shall deem advisable, irrespective of whether or not such securities are approved by law as investments for trust funds;" There was no assurance as of September 30, 1953, that the assets distributed to the trust would continue to be held in the trust. The trustee had the unrestricted right under the terms of the trust to sell the stocks which comprised the most substantial part of the trust assets, as well as the other trust property. Of course, the trustee was restricted in the sense that he was a fiduciary and could not act in breach of his fiduciary duties to the beneficiaries of the trust. But it is also recognized that Robert was not only trustee but also the sole remainderman, and it would not be unreasonable to expect that he would act to protect that remainder interest by investment in safer assets with perhaps a lower yield so long as such action did not violate his duty to Daisy as beneficiary of the life estate. This is especially the case here where one of the principal assets of the trust consisted of the stock in Central Waxed Paper, which was a closely held corporation in a highly competitive industry.

Petitioner has pointed to Central Waxed Paper's history of paying high dividends with ease based on a consistently growing earnings record with substantial retained earnings for growth. Petitoner has argued that Daisy could reasonably expect to benefit through the trust from a continuation of these dividends because of the blockage problem which petitioner asserts would and did effectively preclude the trustee from disposing of the Central Waxed Paper stock, from which a substantial part of the trust income was derived, and from which the dividends paid in the years 1948 through 1953 were the basis of petitioner's projected yield.

We cannot agree that there could be a reasonable expectation that the trustee would not dispose of the shares of Central Waxed Paper. In fact, Robert testified that he desired to dispose of the stock in Central Waxed Paper, if he could. Robert had worked during much of his adult life in various capacities in the paper industry. He was a member of the board of directors of Central Waxed Paper since 1948, and was aware of the highly competitive nature of the paper converting industry of which Central was a part. At the trial Robert stated that he would not consider a sale of Central stock because he felt he would be forced to sell at a discount from the stock's value and because it would entail recognition of capital gains. However, Robert indicated that he thought the unmarketable character of the Central stock was undesirable and he testified that it was his hope that Central be acquired by a corporation whose stock was more marketable in a share-for-share exchange, and Robert testified that it was his intent and desire to dispose of the Central stock, if such possibility were to occur. Such a possibility did occur, when in July 1960, Robert disposed of the stock in Central in a nontaxable exchange of Central stock for stock in St. Regis Paper Co.

In addition to the disposition of the Central shares, Robert made several other purchases and sales of trust assets during the course of his administration of the trust. These purchases and sales have been set forth in the Findings of Fact above and each transaction need not be repeated. Suffice it to say that the number and extent of these purchases and sales were not minimal.

Therefore, it is concluded that a projected or expected yield on the trust assets could not be based on the income which would have been produced if those assets were held in trust during 1953, or based on the average annual income which would have been produced in the years 1948 through 1953, inclusive, if they had been held in trust during those years, because on the basis of the broad powers of administration to which the trustee was entitled, there could have been no

reasonable expectation that the assets distributed to the trust would continue to be held by the trust during Daisy's lifetime.

Of course, in addition to this uncertainty, there was the added uncertainty of whether the stocks distributed to the trust which constituted the income-producing assets of the trust would continue to pay comparable dividends in the future. The vagaries of business with respect to the corporations whose stocks were held by the trust and the uncertainties with respect to the future dividends of those corporations were not and could not reasonably be reflected in petitioner's projected annual yield based on previous dividends paid.

Finally, petitioner's computation of the annual yield or projected yield on the basis of the dividend income and fair rental income of the trust assets is in error in that it fails to take into consideration any of the administration expenses of the trust. While petitioner's annual yield was computed on the basis of gross income of the trust assets expressed as a percentage of the alleged fair market value of the trust corpus, it is clear that the value of Daisy's life estate in 41.307 percent of the trust which she received by virtue of her election should have been based on the income which she was to actually receive (i.e., on the net income). Under the terms of the trust, "taxes, assessments, costs, fees and expenses of every kind and nature, incurred or expended in the collection, care, administration, protection or distribution of the trust estate" was payable out of the trust income, with but few exceptions. It is clear that the value to Daisy of the life estate was the distributable income of the trust, the net income to be received by her, and the valuation of the life estate as well as the remainder interest should have been based on a projected yield which would be available to her, and not on the basis of gross income produced by the trust assets.

Therefore, for the reasons stated hereinabove, it is concluded that petitioner has failed to prove that the valuation of the life estate in Andrew's portion and the remainder interest in Daisy's portion of the trust by the use of table 1, sec. 20.2031–7 (f), of the regulations, would produce a result substantially at variance with the facts. Under the facts here, we conclude that respondent's use of the table in valuing the property interests was proper.

It is found that the value of the life estate in Andrew's portion, as of September 30, 1953, was $34,413.77. The value of the remainder interest, as of the same date, transferred to the trust by Daisy was $175,901.27. If the life estate with a value of $34,413.77 were the only consideration received by Daisy by virtue of her election, it would be clear that the transaction would be a transfer with retained life estate for less than adequate and full consideration in money's worth. But

this was not the only consideration received by Daisy. During the period between Andrew's death on April 16, 1952, and the creation of the trust on September 30, 1953, a period of approximately a year and a half, Andrew's share of the community property was producing income, which to the extent not otherwise required to pay the debts and expenses of administration of Andrew's estate, and to the extent Daisy did not otherwise have a right to it under California law, was income to which Daisy was entitled upon and by virtue of her election. The effective date of Daisy's election was September 30, 1953, and as the result of her election on that date, Daisy became entitled to a life estate under the trust created pursuant to Andrew's will, plus certain benefits and income from Andrew's share of the community property accruing during the administration of his estate which were not otherwise required to pay administration expenses and debts of Andrew's estate and which Daisy would not have been entitled to but for her election. The consideration received by Daisy, therefore, was the life estate valued as of September 30, 1953, and certain proceeds from Andrew's share of the community property which had accrued prior to September 30, 1953, and which were payable to Daisy by virtue of her election. This latter part of the consideration was determinable as of September 30, 1953, on the basis of actual facts which had transpired. Although the precise amount of income produced by Andrew's share of the community property during this period was not submitted at trial or on brief by either respondent or petitioner, nor the amount of that income which Daisy received by virtue of her election, it is clear from the evidence that the gross income produced by all the community property of the spouses during the period April 16, 1952, to October 7, 1953 (the period of administration of Andrew's estate), was a total gross income of $29,047.63. The gross income from Andrew's portion of the community could not have exceeded 50 percent of this amount, or $14,523.82, and Daisy by her election became entitled to this amount (or a lesser amount depending upon certain factors such as whether administration expenses, debts, or other charges were payable out of this amount, whether Daisy had statutory rights under California law to part or all of the income from Andrew's share of the community accruing during the administration of his estate, and whether 50 percent, 41.307 percent, or some other percentage was Andrew's share of the community during the administration of his estate).

Respondent's position has been that the consideration received by Daisy in the transaction was only the life estate from Andrew's portion of the trust valued as of September 30, 1953. Petitioner, on the other hand, points out that Daisy's election entitled her to the pro-

ceeds from Andrew's portion of the community property from the date of his death and petitioner has argued that the consideration received by Daisy should be the value of a life estate in Andrew's portion of the community valued as of the date of his death. Both positions are considered by us to be in error. It is our conclusion that the consideration received by Daisy consisted of the life estate in Andrew's portion of the trust valued as of and beginning on September 30, 1953, plus the income and other benefits paid to Daisy only as a result of her election, which had accrued from Andrew's portion of the community property during the period of the administration of his estate.

As indicated above, the maximum income which Daisy could possibly receive from Andrew's portion of the community property during the administration of his estate could not have exceeded $14,523.82. Assuming, *without deciding*, that Daisy received the maximum conceivable amount from Andrew's share of the community property during that period ($14,523.82), it is still clear that the transfer of her remainder interest, valued at $175,901.27, was a transfer for less than adequate and full consideration in money or money's worth which could have amounted, at the very most, to $48,946.59.

Petitioner contends that in the event that any of Daisy's community property transferred to the trust is includable in her gross estate, the proper amount to be deducted pursuant to section 2043 of the Code from the amount includable is the actual trust income received by Daisy during her lifetime. Petitioner contends that "the actual yield received by Daisy during her lifetime from the Andrew trust and from the private annuity contract for which she transferred a partial interest in that trust in 1959, was the sum of $304,090." Petitioner relies on *Righter* v. *United States*, 258 F. Supp 763 (W.D. Mo. 1966), and *Nourse* v. *Riddell*, 143 F. Supp. 759 (S.D. Cal. 1956), in contending that only the value of Daisy's share of the community property transferred to the trust in excess of the actual consideration received by Daisy during her life should be included in her gross estate.

Respondent contends that the amount includable in Daisy's gross estate is the value of the portion of the trust attributable to her share of the community property transferred to the trust (58.693 percent), valued as of the day of Daisy's death, less the value of the consideration received, valued as of the date of acquisition. He argues that the consideration received for the purposes of section 2043 was the life interest in 41.307 percent of the trust and that the value of this interest on the date of acquisition was $34,407.10. He relies on *Estate of Lillian B. Gregory, supra*.

It is our judgment that respondent is correct in his contention that the 41.307-percent life interest in the trust received by Daisy in con-

sideration for her election to have her share of the community pass to the testamentary trust should be valued as of the date received, September 30, 1953, for the purposes of determining the amount includable in Daisy's gross estate under section 2034. *United States* v. *Righter*, 400 F. 2d 344 (C.A. 8, 1968) ; *Estate of Lillian B. Gregory, supra.*

In *United States* v. *Righter, supra* at 347, the Court of Appeals for the Eighth Circuit, referring to section 2043 of the Code, held that the statute means consideration received by the transferor-decedent as of the date the transfer for insufficient consideration is made, not as of the subsequent date of decedent's death. The Court of Appeals overruled the decision of the lower court, *Righter* v. *United States, supra,* which was relied on by petitioner here. *Nourse* v. *Riddell, supra,* also relied on by petitioner, has been effectively distinguished from situations such as those involved in the instant case, in *Estate of Lillian B. Gregory, supra* at 1020.

It is concluded that the 41.307-percent life interest is properly to be valued as of September 30, 1953, the effective date of transfer for the purpose of determining the consideration received by Daisy, under section 2043.

However, as discussed hereinabove, this life interest was not the only consideration received by Daisy in the transaction resulting from her election. She also received as consideration certain amounts of income and other benefits which had accrued from Andrew's share of the community property between the date of his death, April 16, 1952, and the effective date of her election, September 30, 1953. As indicated hereinabove, the amount of the income and benefits accruing during the period between Andrew's death and the distribution of his estate, which Daisy became entitled to by virtue of her election, has not been shown by the parties. We think that those amounts which Daisy acquired as a consequence of her election were part of the consideration received and that those amounts should be computed and stipulated by the parties for the purpose of computing the amount includable in Daisy's gross estate under section 2043. It should be noted, however, that a family allowance, homestead rights, and any other rights in Andrew's estate to which the widow was entitled under California law, which she would have received even in the absence of an election to act in accordance with Andrew's will, were not part of the consideration received by Daisy in exchange for the transfer to the trust of the remainder interest in her share of the community.

Petitioner contends that, regardless of whether we find that Daisy's transfer of her remainder interest upon her election in 1953 was for less than adequate and full consideration in money or money's worth, the portion of the trust property attributable to her share of the com-

munity property transferred to the trust is not includable in her gross estate because Daisy did not retain a life estate in the portion of the trust attributable to her, which petitioner alleges Daisy transferred to Robert by the agreement of December 9, 1959, in a bona fide sale for adequate and full consideration. Respondent contends that the 1959 agreement lacked validity and was ineffective as a transfer of Daisy's life interest in the portion of the trust attributable to her share of the community property because it was in violation of the spendthrift provision of the trust instrument and because the execution of the agreement by Robert constituted a breach of his fiduciary duties as trustee of the trust. Respondent argues that because the attempted transfer was invalid, Daisy retained the *right* to net income from the portion of the trust attributable to the transfer of her share of the community, and, therefore, the value of this portion of the trust, less the consideration received in the transaction pursuant to her election is includable in her gross estate by application of sections 2036 and 2043 of the Code. Respondent argues, further, that even if we consider the 1959 agreement valid and effective, it must be considered a transfer in contemplation of death for less than adequate and full consideration in money or money's worth, and respondent argues that by application of sections 2035, 2036, and 2043, the same amount is includable in Daisy's gross estate as if she had made no transfer of her life estate in the portion of the trust attributable to her transfers to the trust. In his alternative contention, respondent relies on *United States* v. *Allen*, 293 F. 2d 916 (C.A. 10, 1961).

As discussed hereinabove in the related income tax cases, under California law Daisy's election to transfer her share of the community property to the trust in exchange for a life estate and other consideration was a contract between the widow and her husband or his estate, the terms of which, as expressed in Andrew's will, were binding upon Daisy. Daisy's attempted transfer of a part of her life estate in violation of the spendthrift provision constituted a breach of contract, which made the agreement voidable, if not void. Moreover, it appears, as respondent has contended, that the agreement was executed to avoid potential income and estate tax consequences and that it was motivated by tax considerations. Therefore, for the purpose of the estate tax questions involved here, we refuse to recognize the attempted transfer of Daisy's life interest in 58.693 percent of the trust as valid and effective.

The evidence leads us to the conclusion that there was no substance or purpose to the transaction aside from the tax-avoidance motives. The essence of a transaction is to be determined not by the subtleties of draftmanship, but rather by its total effect. *Helvering* v. *Clifford*, 309 U.S. 331 (1940); *Gregory* v. *Helvering*, 293 U.S. 465 (1935). It is

clear in the instant cases that nothing of substance was accomplished by Daisy's attempted transfer of a portion of her life estate in the agreement executed December 9, 1959. When Robert entered into the agreement with his mother on December 9, 1959, he intended to use trust income to pay part or all of the annuity because he could not pay all of the annuity out of his own annual income. In fact, in her taxable year 1960, the amount of $22,150 out of the total annuity payments of $22,979.11, was paid by checks drawn on the trust account by Robert, the drawer, acting as trustee. In that year, only $829.11 of the annuity was paid by Robert by check drawn on his personal account. In effect, almost all of the annuity payments in 1960 were made out of Daisy's life interest which she allegedly transferred. In substance, she continued to receive the benefits of the life estate in the portion of the trust allegedly transferred. Thereafter, for her taxable year 1961, the annuity payments made by Robert were drawn on his personal account, only after he was advised to do so by counsel. The annuity agreement was executed for no other purpose than to avoid income and estate taxes. Indeed, petitioner admits that the agreement was motivated by tax considerations, but he argues that there were other reasons, independent of the tax motives, which were responsible for Daisy's entering into the agreement, such as the assurance of an annual income in a fixed amount. We cannot accept petitioner's argument that a genuine motive in entering into the agreement was to secure a fixed annual income because under the trust Daisy was already assured that the standard of living to which she had been accustomed would be maintained, where the trustee was instructed to provide for her "proper care, maintenance, comfort and support *according to her station in life*" out of net income or, if necessary, out of the corpus of the trust. (Emphasis supplied.) It is our finding that the agreement of December 9, 1959, was solely motivated by estate tax and income tax considerations, and the attempted transfer of Daisy's life estate in 58.693 percent of the trust is not recognized for tax purposes. It is concluded that Daisy retained a right to the income from the portion of the trust assets attributable to the transfer of her share of the community property to the trust, and that the value of that portion of the trust less the consideration received (as discussed hereinabove) is includable in her gross estate. *Vardell's Estate* v. *Commissioner*, 307 F. 2d 688 (C.A. 5, 1962). Even if the agreement of December 9, 1959, is considered a valid assignment of part of Daisy's life estate, it is our judgment that it was a transfer in contemplation of death and for less than adequate and full consideration. *United States* v. *Allen*, 293 F. 2d 916 (C.A. 10, 1961). However, it is to be noted that we do not base our decision on this point because, if we were to do so, consist-

ency with the *Allen* decision would require that the value of the trust property included in Daisy's gross estate be reduced by the value of the annuity provided for under the 1959 agreement. A different result follows from our conclusion that the 1959 agreement is not recognized for tax purposes, because the value of the portion of trust includable in Daisy' estate is not reduced by the value of the annuity.

Another question presented in the estate tax case is whether the amount of $20,446.66, which had been earned by the trust, during Daisy's lifetime, but which was held by the trustee and remained undistributed at the date of her death, should be included in her gross estate. Daisy was the sole income beneficiary of the trust during her life and she was entitled to the "entire net income from the trust in monthly or other convenient installments." However, the trust instrument provided that the trust was to terminate upon Daisy's death and "upon such termination the entire principal of the trust estate and *all accrued and undistributed income therefrom*" was to be paid to the remainderman, Robert, or his issue if he then be deceased, or if both Robert and his issue then be deceased, to those who would take by intestacy from Andrew at the date of the termination of the trust. (Emphasis supplied.)

In his deficiency notice, respondent described the amount of $20,-446.66 as "Income owed but not distributed to decedent." Respondent regards the $20,446.66, which accrued in the trust during Daisy's lifetime, as income which was currently distributable to her under the terms of Andrew's will. He contends that the "property was subject to a claim of right in the decedent" and as such he regards it as properly includable in Daisy's estate. Respondent relies on *Estate of Emma Earle*, 5 T.C. 991 (1945), and *Merritt J. Corbett*, 12 T.C. 163 (1949).

Petitioner argues that this $20,446.66 was income properly distributable to Robert by the trust pursuant to the private annuity contract and, therefore, that it was not distributable to Daisy during her life. Petitioner contends that even if it was distributable to Daisy during her life, under the trust her right to the income was terminated at her death and, therefore, petitioner contends that the amount is not includable in Daisy's estate under section 2033 of the Code. He argues that the trust provision directing that all accrued and undistributed income be paid over to the remainderman "has been upheld under California law." *Estate of Baldwin*, 69 Cal. App. 2d 760 (1945).

Petitioner has made no showing that the amount of $20,446.66 earned by the trust in the years 1960 and 1961 was attributable to the portion of the trust consisting of Daisy's share of community property transferred to the trust, which petitioner argues Daisy was not entitled

to in 1960 and 1961 as the result of her alleged assignment by the agreement of December 9, 1959. Respondent has argued that the distributable net income from Andrew's portion (41.307 percent) was not distributed, either in whole or in part, to Daisy in 1960 and 1961. Petitioner has made no showing that the trust income attributable to Andrew's portion of the trust was distributed to Daisy in 1960 or 1961, and, indeed, from the trust accounts in evidence, Exhibit 18, it appears that no direct payments of trust income were made to Daisy in these years, aside from the 1960 payments out of trust income which constituted annuity payments. Although certain indirect payments were made by the trustee on Daisy's behalf out of trust income, it is clear that the trustee did not distribute all of the trust income accruing in 1960 and 1961 from Andrew's portion of the trust to Daisy in those years. Furthermore, we have determined that the 1959 annuity agreement was of no effect and that all of the trust's net income in 1960 and 1961 was currently distributable to Daisy for those years and, hence, includable in her income for income tax purposes. Therefore, petitioner cannot be sustained in his contention that Daisy did not have a right to the $20,446.66 of distributable net income of the trust during her lifetime.

Also without merit is petitioner's contention that Daisy did not have an interest in the undistributed trust income at the date of her death includable under section 2033.

It is our view that Daisy's personal representative had an enforceable claim against the trustee for the net income in the amount of $20,446.66 which had accrued to the trust and was available for distribution in 1960 and 1961, but which the trustee failed or neglected to distribute to the life beneficiary.

There has been no evidence introduced of an adjudication in an adversary proceeding or in any proceeding of a State court of California with respect to Daisy's property interest in the undistributed trust income at the date of her death. Nor are we aware of any decisions of the California courts which deal with the rights of the beneficiary of a life estate to accrued but undistributed income of a trust where there is a provision that all accrued and undistributed income of the trust upon the death of the life beneficiary should be paid over or distributed to the remainderman or other successor beneficiary. Therefore, it is left to us to determine what property interests Daisy possessed under the trust at her death. In this regard it is our view that the question of whether Daisy had a right or claim to the undistributed income which survived her death and which her personal representative could enforce on behalf of Daisy's estate is to be answered by a determination of the intent of the settlor, Andrew, as expressed in the trust instrument providing for the creation of the trust.

Under the terms of the trust, it is provided that the trustee was to pay to Daisy or to apply on her behalf the *"entire net income from the trust in monthly or other convenient installments."* The trustee was not given discretion to accumulate the income of the trust. At the very least he was to pay the income of the trust to Daisy, when it was conveniently possible, if not monthly. From the trust accounts of receipts and disbursements, Exhibit 18, it is clear that Robert made distributions of the trust income during the years 1954 through 1959, in intervals of 2 to 3 months, usually paying a somewhat larger than the ordinary amount in January of each year. However, these payments were not made by the trustee to Daisy in 1960 and 1961. The only distributions made by the trustee to Daisy were the so-called annuity payments described previously, and no payments appear to have been made directly to Daisy as the holder of a life interest in the trust in 1960 and 1961. It is our view that it was the trustee's fiduciary duty to distribute to the life beneficiary the amount of $20,446.66, which had accrued to the trust and which was available for distribution in 1960 and 1961, and it is our finding and conclusion that Daisy's right to this amount did not terminate upon her death and that Daisy's personal representative had an enforceable claim to this income on behalf of the decedent's estate.

In construing the testator's will to determine his intent, it is noted that the provision in paragraph 4, subparagraph C, subdivision 3, which relates to distributing accrued or undistributed income, is to the effect that "all accrued or undistributed income, *if any,*" is to be paid over to the remainderman. By the use of the phrase "if any," it is clear that the testator did not contemplate that substantial amounts would be paid over to the remainderman, and certainly not the amount of $20,446.66. Also the provision refers to *"accrued* and undistributed income," not to *accumulated* income, and after considering Andrew's will in its entirety it is concluded that it was not the testator's intent to allow the trustee to accumulate income to be paid over to the remainderman, especially where the trustee was the remainderman under the trust.

The case cited by the petitioner, *Estate of Baldwin,* 69 Cal. App. 2d 760 (1945), is not applicable here. That case held that a remainderman was entitled to undistributed income of a trust which had not been received by the trust and was not available for distribution until after the death of the life income beneficiary and under the trust instrument there the life beneficiary was entitled only to the net income of the trust which was *available* for distribution during the beneficiary's life. In our case the undistributed income was available for distribution during Daisy's life, but the trustee failed or neglected to distribute it.

Moreover, under the terms of the trust, Daisy's right to the net income was not limited to the amounts "available" for distribution.

We feel quite sure that under California law Daisy's right to the accumulated and undistributed income of the trust, where there was no provision in the trust instrument giving the trustee any power or discretion to accumulate income, would be enforceable by her estate against the trustee. We feel this is so even where there is a provision, as we have here, that accrued or undistributed income is directed to be distributed to the remainderman.

Although there do not appear to be any California cases dealing directly with this question, it has been dealt with in other jurisdictions and the general treatment has been to the effect that the life beneficiary's estate has been entitled to the accrued income available for distribution. See the cases in 141 A.L.R. 1469, where the following has been said in regard to this question:

Another type of provision casting doubt on the testator's intent is a direction in the trust instrument to pay over, upon the life beneficiaries' death, any accrued or accumulated income to subsequent beneficiaries. Most cases seem to hold that such a provision, without more, does not evince an intention on the part of the creator of the trust that income available for distribution, but not paid to the life beneficiary, should be denied to his estate.

See also *Martin* v. *United States*, 121 Ct. Cl. 829 (1952). It is concluded that the right to the undistributed income of the trust is an interest in property which Daisy possessed at the date of her death which is includable in her gross estate under section 2033.

Another similar issue involves $7,768.20, the aggregate of amounts in income taxes which were paid by the trustee for income reported as taxable income of the trust for the trust's taxable years 1957, 1958, and 1959. The parties are agreed that no part of the trust income was taxable to the trust itself in those years, that the income taxes were erroneously paid by the trust, and that the trust is entitled to a refund of the taxes paid. Respondent contends that Daisy had a right during her life to the amounts constituting income taxes improperly paid by the trustee in the years 1957, 1958, and 1959, and he contends that her right to the income tax refunds did not terminate at her death and that it constituted an interest in property includable in her gross estate under section 2033.

Petitioner contends that, although respondent agrees that the trust was entitled to refunds of income taxes paid by the trust in 1957, 1958, and 1959, he has not allowed those claims as of the time of the trial, nor, petitioner contends, has respondent given any indication that he intends to make the refunds. Petitioner contends that the income tax refunds are not distributable until they are actually repaid to the trust, and since they had not been repaid at the date of Daisy's death, she had

no claim to overpaid income taxes and she possessed no property interest includable in her estate under section 2033.

There has been no evidence presented of whether a claim for refund of the income taxes paid by the trust in 1957, 1958, and 1959 has been filed by the trustee or by any other representative on behalf of the trust. And it does not appear from the evidence whether respondent intends to make a refund of the overpayment to the trust. Likewise, it has not been indicated whether the statute of limitations bars the recovery of the overpayment. However, the question here is not whether Daisy or her estate will in fact be able to recover the overpayments. The question is whether Daisy had an interest in the overpayments at the date of her death which did not terminate at the date of death so that it would be includable in her estate under section 2033.

Daisy was entitled to the distributable net income of the trust during her lifetime. The distributable net income of the trust for the years 1957, 1958, and 1959 includes the amounts erroneously paid as income taxes by the trust in these years. Were it not for the error in paying the amount of $7,768.29 as income taxes, these amounts would have been distributed. Regardless of the fiduciary's error, Daisy was, in fact, entitled to have this aggregate amount distributed to her during the years 1957, 1958, and 1959. It was distributable to her and includable in her income in those years. The estate tax question here is whether Daisy's right to the $7,768.29 is defeated upon her death, by virtue of the fact that the income taxes erroneously paid by the trustee were not refunded to the trustee prior to Daisy's death and, therefore, were not available to be distributed prior to her death. Petitioner considers these overpayments as accrued and undistributed income to which Robert, the remainderman, became entitled upon Daisy's death.

After careful consideration of this question, it appears to us that the conclusion required can be no different from our conclusion under the previous issue concerning the undistributed income of the trust. It is our view that Daisy's right to the income taxes erroneously paid by the trustee was a right which survived her death and that she had a claim to the amounts paid which was enforceable by her estate. Hence, it is concluded that the income tax refunds owed to the trust constituted property of the decedent includable in her estate under section 2033 of the Code. As we have stated hereinabove, Daisy had a right to the entire net income of the trust during her lifetime. The income taxes, if they had not been erroneously paid by the trustee, would have been distributed to Daisy as part of the net income of the trust. It seems apparent to us that the error of the trustee in paying the $7,768.20 to the Commissioner, making this amount unavailable for distribution to Daisy, did not defeat her right to it. Likewise, the fact

that the $7,768.20 was unavailable for distribution during Daisy's life through the trustee's error, did not defeat her right or the right of her estate to it. There was a right of action against the trustee to compel him to recover the overpayments. If for any reason the overpayments could not be recovered, it appears to us that Daisy's estate could surcharge the trustee for his obvious error in paying the taxes. Since Daisy's interest in the income tax refunds was not terminated at her death, as we have determined, the value of this interest is includable in her gross estate under section 2033 of the Code. It is recognized that a potentially harsh result could occur if the trust's claim for refund of the overpayment is now barred, because in that event amounts which are here determined to be includable in the decedent's gross estate would have been beyond decedent's reach by the error of the trustee in making the payments and in failing to make timely claims for refunds. However, it has not been shown whether the refund claims had been barred by statute as of Daisy's death so that an action against the trustee to compel him to recover the erroneously paid taxes would be without effect. Nor has it been shown that Daisy's estate could not surcharge the trustee for his error. In other words, it has not been demonstrated that Daisy's interest in the overpayments had been effectively defeated by a bar of the statute of limitations for refunds, or for other reasons, preventing a recovery of the amount from the trustee. Therefore, we must assume that the right to the refund or its equivalent had not been defeated, and that if the decedent or her personal representative had been vigilant, they could have recovered the amount to which Daisy was entitled.

Finally, there is the question of whether respondent should be sustained in making additions to petitioner's estate tax in the amount of $33,196.68, under section 6651(a) of the Code, representing a 25-percent penalty for failure to file the estate tax return within the time prescribed by statute. Daisy died on December 2, 1961, and an estate tax return for her estate was due to be filed 15 months after her death, on March 2, 1963. An estate tax return was filed on November 22, 1963. It was not filed timely. In the return petitioner reported a gross estate of $7,553.16 and no estate tax was paid.

Petitioner contends that there was reasonable cause for his failure to file the estate tax return timely. He alleges that he has always relied on his attorney's advice with respect to what tax returns should be filed and when they should be filed. He further states that his legal counsel advised that no estate tax return should or need be filed because Daisy's gross estate was less than the specific exemption of $60,000 provided for in section 2052 of the Code. Respondent contends that the failure to file was not due to reasonable cause. He argues that

there were decisions relating to estate taxes which should have put petitioner's attorneys on notice that an estate tax return would be required for Daisy's estate.

It is our finding and conclusion that petitioner's failure to file timely was due to reasonable cause and was not due to willful neglect, so that the additions to tax under section 6651(a) should not be imposed upon petitioner. There is evidence that petitioner has relied on his counsel's advice in his tax matters. It is clear from the trust accounts that petitioner's counsel prepared the decedent's income tax returns as well as her estate tax returns. We are convinced that petitioner's attorney, in good faith, believed there was no need to file an estate tax return, and that petitioner had no reason to doubt the competence of his attorney. His reliance upon counsel's advice was reasonable and justified. Reliance on legal counsel's advice is reasonable cause. *Portable Industries Inc.*, 24 T.C. 571 (1955); *Daisy M. Twinam*, 22 T.C. 83 (1954); *Christina de Bourbon Patino*, 13 T.C. 816 (1949). The addition to the estate tax by respondent under section 6651(a) is not sustained and it shall be set aside.

The findings and conclusions herein require recomputations under Rule 50.

*Decisions will be entered under Rule 50.*